# Wheeling.

PATRICK CUNNINGHAM *et al. vs.* WILLIAM DORSEY.

January Term, 1869.

1. The common law of England, so far as it is not repugnant to the principles of the bill of rights and constitution of the State of Virginia, was in force in that State when the constitution of this State took effect, and is, therefore, the law of the State unless repealed or modified by the general assembly of Virginia or the legislature of this State.

2. Adverse enjoyment of lights for a time which must have exceeded thirty years, does not give sufficient right to the party enjoying them to enable him to maintain an action for obstructing them.

3. D. owned and occupied property in which windows had been constructed since 1803. C. owned adjoining property which had been in occupancy of the owners from 1803 to 1826 inclusive, and had been in actual occupancy of tenants paying annual rental value from that time till the bringing of the suit in 1866. D. sought to enjoin the tenants of C. from erecting buildings on his lot that would darken his windows and impair the enjoyment of his property. HELD:

    1. That the time from 1803 to 1826, when the property of C. had been in possession and actual occupancy of the owners thereof, was not sufficient to make the windows of D. ancient lights.

    2. The time from 1826 to the bringing of the suit cannot be computed in the period necessary to make the windows ancient, as the property of C. was not in the actual occupancy of the owners thereof, but in the possession and actual occupancy of the tenants. The enjoyment of the windows by D. was not a matter for which C., or those from whom he derived title, could bring an action for damages, and the only remedy was to obstruct them, which they could not do without committing a trespass on the rights of the tenants, which they were not required to do.

This cause was brought to April rules, 1866. The complainant below, William Dorsey, filed a bill in the circuit court of Berkeley county, alleging his ownership in fee of a certain lot in Martinsburg, on which was erected a build-

ing fronting on Burke street with wing extending to the rear. That for fifty years he and those under whom he held had, without interruption, enjoyed the light and air derived from windows on the west side of the rear building; that one Patrick Cunningham was the owner of the lot adjoining on the west side, and had leased it to J. W. and C. M. Slyer for a period of five years, who proposed to erect a building that would deprive complainant of the use and benefit of the windows on the west side of his building. He asked that the parties named be restrained and enjoined from so interrupting his use and enjoyment of his ancient lights. The defendant Cunningham demurred to the bill, and answered that the building proposed to be erected would not be over fourteen feet high and would be five feet from the complainant's house; that the lot owned by him was in the business part of the town and if he was not permitted to build on it that it would be greatly impaired in value; that since he had been the owner of the lot it had been in the occupancy of tenants who had paid an annual rental value for the use thereof; that according to his information the former owners of the lot in fee simple, had not, within the memory of man, been in actual possession of it, but it had been in possession and occupancy of tenants who paid a rental value for the same. He denied that the consent of owners had ever been given, which was claimed by an amended bill, to the use of the windows by the defendant.

The defendants Slyer answered that they had leased the lot and property of Cunningham for five years, and regarded themselves at liberty, under the lease, to erect any buildings they might think proper.

Several depositions were taken in the cause, from which it appears that the house and lot owned by Dorsey had been in the actual possession and occupancy of Dorsey and those under whom he claimed from 1803 to the bringing of the suit. That the property claimed by Cunningham had been in the actual occupancy of the owners thereof from 1803 to 1826, and that from that time to the bringing of the suit it had been in the possession and occupancy of tenants, who

paid an annual rental value therefor. This is all the testimony that it is necessary to show here, as it is all that bears on the point that was determined by this court.

The court below overruled the defendant's demurrer and perpetuated the injunction, whereupon they appealed to this court.

*Stanton & Allison* for the appellants.

This case raises the question, is the English doctrine as to ancient lights the law of West Virginia?

We claim that a prescriptive right to light and air is not suited to the condition of this State or any other country which is growing and changing so rapidly in all its relations of property as well as its values and modes of enjoyment. See Wash on Eas., 582–589, 2 Ed.; 2          on Real Prop., 318, 3 Ed., 1868.

Such is the declared opinion of the legislature of West Virginia. See new Code of 1869.

The English doctrine has been repudiated and declared not to be the common law in the United States by the highest courts of the following States, which include nearly all of those wherein the question has been decided. *Pierre* vs. *Ferword*, 26 Maine Rep., 436; *Hubbard* vs. *Town*, 33 Vermont Rep., 295; *Carney* vs. *Dee*, 14 Gray, 583; *Paine* vs. *Boston*, 4 Allen, 169; *Ingraham* vs. *Hutchinson*, 2 Conn. Rep., 584; *Parker* vs. *Foote*, 19 Wend., 309; 10 Barb.. 537; 4 Coms., 195, 200; *Havership* vs. *Sipe*, 33 Penn. St., 368, 371; *Cheny* vs. *Stine*, 11 Md., 1, 24, overruling 5 Har. & J., 477; *Ward* vs. *Neal*, 37 Ala., 501, overruling a former contrary decision; *Napier* vs. *Bedwickle*, 5 Rich., 311–324, overruling *McCready* vs. *Thompson*, Dudley, 131; *Morrison* vs. *Margatt*, 7 Am. Law Reg., 336, April 1868.

But if the English doctrine is to be enforced in this State, the complainant was not entitled to the relief granted upon the record in this case.

1st. The complainant had an adequate remedy at law by an action on the case for damages and therefore the Chancellor should not have interposed. His right was disputed,

and, to say the least, was not clear.    Wash. Eas., 668, p. 1, 780, p. 4.

2d.  There was no acquiescence on the part of Cunningham and those under whom he claims.   None is alleged in the bill.

" *User and acquiescence are both necessary.*   User alone, although twenty years and unmolested, if it be not sanctioned by the acquiescence of the party against whom the easement is claimed, is insufficient to raise the presumption of a license or grant."    Matthews' Pres. Ev., 320, margin, p. 305–6.   See also his article " as to lights," p. 318, 322; 3 Kent, 448, last edition, 573.

Dorsey's bill simply alleges *user without interruption.*   This is simply equivalent to an allegation of "*user unmolested*" with language of the above authority and is insufficient and demurrable, unless it is also alleged that it was acquiesced in by the adjoining owner.   See next quotation.

There is no allegation even that the user was with the knowledge of the adjoining owner.

"Nor can the presumption be made if the party who is alleged to have authorized the use of the easement, possessed only a particular interest in the estate prejudiced by it."    Matthews, 321.

. In order to acquire an easement of light over a parcel of land by adverse enjoyment, the same must have been had while the servient estate was in possession of the owner of the inheritance.   No length of enjoyment as against a tenant can bind the rights of a reversioner.    *Baker* vs. *Richardson*, 4 Barn. & Ald., 578 ; *Daniel* vs. *North*, 11 East, 372; Wash. Easements, 579, (margin, 493–4); *Holland* vs. *Long*, 7 Gray, 486; 3 Kent, 448.

In the case before the court the owner was not in the occupancy a sufficient time to secure to Dorsey an easement under the English rule. . It is claimed that he was by Dorsey, but this should be clearly proved.   If there is a reasonable or fair doubt upon this point the complainant should have been required to first resort to his remedy at law, where the question of fact would have been tried by a jury.

The proof does not establish that Dorsey would sustain real injury.

"To enable the party to maintain an action for the injury there must be a substantial privation of light sufficient to render the occupancy of the house uncomfortable, and to prevent the owner from carrying on his accustomed business on the premises as beneficially as he had formerly done, and it is for the jury to discriminate between practical inconvenience and a real injury to the enjoyment of the premises." Wash. Easement, 582, margin 4971, and authorities there cited.

"The common law of England is at this day the law of this commonwealth, except so far as it has been altered by statute or so far as its principles are inapplicable to the state of the country, or have been abrogated by the revolution and the establishment of free institutions. It adapts itself to the situation of the society, being liberalized by the courts according to the circumstances of the country and the manners and genius of the people, so as to effect a reasonable and substantial rather than literal compliance with its principles." 1 Tucker's Commentaries, 9; 1 Wash., 83; 1 H. & M., 162; 4 H. & M., 19; 6 Munf., 148; 3 Leigh, 339.

In pleading a right arising from long and uninterrupted enjoyment, the party who relies upon it must allege a grant of the right, though in point of fact no such grant was ever made. And there must be an adverse user under a claim of right or the presumption will not arise. 1 Tucker Com., book 2, p. 6; Wash. Easments, 124; 4 Rand., 66.

Daniel Marker testifies that he owned the Dorsey house twenty-five years ago, and was the owner from three to five years, and he made no claim of a right to light or air through those west windows. That he sold to Jacob Myers, who he thinks made no such claim. Myers sold to Dorsey.

If the owner of the servient estate die, and the heir be under disability the effect of the prescription is arrested and suspended during the disability. 2 Wash. Easments, 305, margin, 501.

*Charles J. Faulkner* for the appellee.

1. The common law of England, whilst adopted in all the States as the basis of its jurisprudence, has not been regarded with equal favor in them all. In some, many of its well established principles have been capriciously changed by legislation. In others, its doctrines have been disregarded upon the fanciful idea that they were not suited to the condition of the country and the progressive spirit of the age. But in Virginia, as a system, its principles have been held in veneration and respect, and except where found repugnant to our form of government and altered by legislative authority, its doctrines have been uniformly followed as the guide of judicial decisions. It has been consequently declared that—

"The common law of England, so far as it is not repugnant to the principles of the bill of rights and the constitution of this State, shall continue in full force within the commonwealth, and be the rule of decision, except in those respects wherein it is, or shall be altered by the general assembly." Ord. of Convention, May 1776, Hen. Stat. at Large, p. 127; 13 Ib., p. 23; 1 Rev. Code, p. 135–6, chap. 38–40.

2. The State of West Virginia adopting the same views, embraced the following provision in the constitution of our State: "Such parts of the common law and of the laws of Virginia as are in force within the boundaries of West Virginia when the constitution goes into operation, and are not repugnant thereto, shall be and continue the law of this State, until altered and repealed by the legislature." Art. 11, sec. 8.

3. The evidence of what the common law is, is to be found in the decisions of the courts of justice and the treatises of learned jurists. The reports of judicial decisions contain the most certain evidence of the common law, and all properly constituted courts consider it their duty to adhere to the authority of adjudged cases. 1 Kent, 476. "It is my wish and my comfort," said the distinguished Lord Kenyon, "to stand *super antiquas vias.* I cannot legislate,

but by my industry I can discover what my predecessors have done, and will tread in their footsteps."

As the common law of England was and is, says Chief Justice Marshall, the common law of this State, and as an appeal from the courts of Virginia lay to a tribunal in England, which would be governed by the decisions of the courts, the decision of those courts, made before the revolution have all that claim to authority, which is allowed to appellate courts. *Murdock* vs. *Hunter*, Rep. 1; Brock. Rep. p. 140–1.

4. The doctrine of acquiring a legal title by long and quiet enjoyment was very early adopted as a part of the common law, the maxim of which has been *ex diuturnite temporis omnia presumuntur solemniter esse acta.* Co. Lit., 6.

5. This doctrine is alike applicable to corporeal and incorporeal hereditaments; and the most ancient and distinguished writers on the common law of England have recognised the principle that a right to an incorporeal hereditament may be acquired by length of time. Bracton L., 4, chap., 38, 53.

6. *Easements* are especially distinguished from other incorporeal hereditaments by the absence of all right to participate in the "profits of the soil," charged with them. The right to receive air, light or water across a neighbors land may be claimed as an easement because the property in them remains common, but the right to take something out of the soil is "*a profit a prendre,*" and not an easement.

7. The number and variety of these easements is very great, according to the exigencies of domestic convenience, or the different purposes to which land and buildings may be appropriated, but of those most frequently referred to in the decisions of the courts, there are seven which are described as affirmative and three of which are described as negative easements.

8. The right to the admission of light and air by ancient windows is one of the negative easements which has been recognized in our earliest reported cases. *Bury* vs. *Pope*, Leonard's Rep., 168, S. C., imperfectly reported Crokes

Elizabeth; Wm. Aldred's case, 5 Cokes' Rep., 118; *Palmer* vs. *Fletcher*, 1 Levins' Rep., 122; *Hughes* vs. *Keene*, Yelverton Rep., 215; Calthrop's Rep., 41; Godbolt's Rep., 183; Bulstrode Rep., 115; Yelverton, 225; *Newhall* vs. *Barnard*, Balstrode, 116.

In Aldred's case, 9th Coke, it was ruled that an action lay for obstructing ancients lights; and the reason assigned is, that the hindrance of light, "*quod messuaquem horrida tenebriate obsuratum fuit*" was such an injury as ought to be redressed; and a case in the 29th Elz. is referred to, which fully sustains the position. In that case Wray, Ch. J, and the whole court of the king's bench, assign as one reason for their judgment "that it may be before time of memory, the owner of said piece of land has granted to the owner of the house to have the said windows without any stopping of them."

9. The more modern decisions are even more explicit and clear in recognizing rights of action at law and injunctions in chancery to vindicate this right to light and air after its quiet and peaceable enjoyment for the period of twenty years. *Darwin* vs. *Upton*, 2 Wm. Saunders, 175 a; *Holcroft* vs. *Heel*, 1 Bos. & Pul., 400; *Campbell* vs. *Wilson*, 3 East, 371; *Daniel* vs. *North*, 11 East, 371; *Balston* vs. *Bensted*, 1 Camp., 463; *Bealy* vs. *Shaw*, 6 East, 208; *Barker* vs. *Richardson*, 4 Barn. & Ald., 578; *Gray* vs. *Bond*, 2 Brod. & Bingh, 667; *Cross* vs. *Lewis*, 2 Barn. & Cres., 686; *Parker* vs. *Smith*, 5 Car. and Payne, 438; *Sutton* vs. *Lord Montfort*, 6 Eng. Cond. Chy. Rep., 257.

10. Every common law writer in England from the days of Lord Coke to the present time, who treats at all upon the subject, recognizes the doctrine in its fullest extent. Best on Presumptions, p. 103; Brooms' Legal Maxims; Drury on Injunctions; Law of Easements by Gale and Whatley, 131 to 139; 3 Black. Com.

11. Every Virginia common law writer has recognized the docrine and taught it to his readers. 1 Lomax, p. 615; 2 Robinson's N. P., 672–4; 4 Rob., 806; Tucker's notes, "Ways."

12. It was recognized as a sound and just principle by the Roman civil law, and is so recognized at this day in the Code Napoleon and amongst all the continental nations of Europe.

When the admirable treatise of J. K. Angel upon the subject of *incorporeal hereditaments* was published, in 1827, not a single dicision had then been rendered in the United States questioning the soundness of the common law principle in regard to light and air, and he presents the doctrine as a part of the recognized law of the country. It is true, Judge Gould, of Connecticut, in a case involving water rights, *Ingraham* vs. *Hutchinson*, 2 Conn. Rep., 584, in a dissenting opinion threw out some *obiter dicta*, expressing dissatisfaction with the reasoning upon which that common law principle was founded. He nevertheless conceded the principle to exist, but thought it anomalous and not to be extended by analogy. Subsequently to that time, Chief Justice Savage, in the case of *Mahan* vs. *Brown*, 13 Wend., declared "that the doctrine was too well settled to require discussion or authority to support it." So in Massachusetts, the supreme court of that State in the cases of *Story* vs. *Odin*, and *Thurston* vs. *Hancock*, 12 Massachusetts, 157, manifest their approbation of the modern adjudications of the courts of Great Britain on that subject. In that excellent work "the American precedents of Declarations," published from the manuscripts of Chief Justice Parsons, the doctrine is fully admitted and the forms of declarations in such cases prescribed. So the chancellor of New Jersey, *Robison* vs. *Pettenger*, 1 Green Chy. Rep., 63, fully recognized the doctrine, and acted upon it by injunction. So the supreme court of South Carolina recognized the doctrine in its fullest extent, *M'Cready* vs. *Thompson*, Dudley's Rep., 131. So the supreme court of Illinois, *Gerber* vs. *Grabel*, 16 Illinois, 217.

But the case of *Parker* vs. *Foote*, 19 Wendell, is now announced as declaring a new doctrine on the subject, and overturning the established law of centuries. It may be remarked that the opinion of Judge Bronson in that case is an *obiter dictum*, as he himself informs us "that the evidence

in the case before him proves that the windows were not enjoyed as a matter of right, but only as a matter of *favor*." It is not then a *res adjudicata* upon the question now before this court, but as the opinions of Judge Bronson have been extensively adopted as the founder of a new school of law, they are worthy of examination.

1. He says it "would be difficult to prove that such a principle was known to the common law prior to the year 1765."

The doctrine that a person acquired an easement to air and light by prescription, precisely as an easement was acquired to ways and flow of water, is recognized as a well established principle of the common law in all the authorities cited in head No. 8, and no case can be found maintaining the opposite doctrine. The only question has been as to the time necessary to acquire the right by prescription. The period originally fixed, July 6, 1189, first day of the reign of Richard I, was a period adopted by the court in analogy to the statute of limitations, 3 Ed. 1, chapter 29, which fixed that as the date for alleging seizin in real actions. By this equitable construction of that statute a period of legal memory was established in contradiction to that of living memory. After the statute of limitation of 38 Henry 8, and 21 James 1, fixed shorter periods of limitation in real estate actions, the same equitable analogies to those statutes, required the time for acquiring rights derived from prescription to be accordingly reduced. And this has been the current of modern adjudication, both in England and in this country. Sergeant Williams concurs in the expression of Lord Mansfield "that an incorporeal right, which if existing, must be in constant use, ought to be decided by analogy to the statute of limitations." This doctrine has been adopted and acted upon in the case of all other easements which have come before the court, such as ways and water courses, and there is no reason why the same analogy of the statute should not be extended to the easement of light and air. There has therefore never been any question of the common law principle that an easement might be acquired to light and air—while there has been a

diversity of decision as to the time necessary to acquire the right.    Gale & Whately's Law of Easements, chapter 5, section 1, page 90 to 98; Best on Presumption, page 103; *Read* vs. *Brookman*, 3 East, 151.

2. "The principle has not been adopted in any of the States." This is an error.    As early as 1815 the principle had been fully recognized in Massachusetts; 12 Massachusetts, 157. In the same year that Judge Bronson repudiated the docrine, and before the date of his opinion, it had been solemnly adopted by the supreme court of South Carolina and by the chancery court of New Jersey. It has also been adopted by the supreme court of Illinois.

3. "It cannot be applied to our growing cities and villages without the most mischievious consequences."    And yet manufacturing cities have sprung up in England within the last censury, with a rapidity nearly equal to our own, without the slightest check from this doctrine. So in Illinois.    The great effort of modern Europe is to remodel its cities; to obliterate its narrow streets; to pull down its pent up and badly ventilated houses, and to provide everywhere a larger admission of light and air as the great preservative of health and comfort.    The policy of Judge Bronson would remit us to the improvidence of the middle ages.

4. It has been argued that the doctrine is an unwise one and inapplicable to this country.    These objections are well answered by the supreme court of South Carolina in the case of *M'Cready* vs. *Thompson*, Dudley's Reports, page, 134.

"The first argument may very properly be addressed to legislators; with judges, however, it can have no weight. The law as we find it, and not as we would have it, is to be our guide.    The other argument can have as little force; the common law is the law of South Carolina as much as it is in England.    It is true, if any of its principles did not comport with our political and civil institutions we would be at liberty to disregard them.    But there is nothing in the principle now under consideration which renders it unsuitable to our political or civil institutions.    It is a mere private right, originating in consent and perfected by lapse of

time, contributing to the comfort and value of a person's habitation."

MAXWELL, J.      The property owned by Dorsey has been in his actual possession and occupancy, and the actual possession and occupancy of those under whom he claims, since 1803 to the time the bill was filed in this case.

The property claimed by Cunningham as to the part thereof overlooked by the windows in the house claimed by Dorsey, was in the possession and occupancy of the owners thereof from the year 1803 to the year 1826 inclusive, and has ever since that time been in the possession of the tenants of the owners.

Upon this state of facts it is claimed that Cunningham, and those claiming under him, cannot erect any building on his lot which will exclude the light or air from the windows of the Dorsey house.   It is well settled by the English common law that the owner of a house or lot will be restrained by injunction and be liable to an action on the case if he makes any erections or improvements so as to obstruct the ancient lights of a house adjoining.

The Virginia convention, in May, 1776, by an ordinance then passed, declared: that "the common law of England, and all statutes or acts of parliament made in aid thereof, prior to the 4th year of James the First, which are of a general nature and local to that kingdom, together with the several acts of the colony then in force, so far as the same may consist with the several ordinances, declarations and resolutions of the general convention, shall be considered as in full force until the same shall be altered by the legislative power of the commonwealth."

The same provision is found in the Code of Virginia, 1860, page 112, in the following form: "The common law of England, so far as it is not repugnant to the principles of the bill of rights and constitution of this State, shall continue in full force within the same, and be the rule of decision, except in those respects wherein it is or shall be altered by the general assembly."

By the 8th section of the XIth article of the constitution of this State, "such parts of the common law and of the laws of the State of Virginia as are in force within the boundaries of the State of West Virginia when this constitution goes into operation, and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the legislature."

The common law of England, so far as it is not repugnant to the principles of the bill of rights and the constitution of the State of Virginia, was in force in that State when the constitution of this State took effect, and is, therefore, the law of this State, unless repealed or modified by the general assembly of Virginia or the legislature of this State.

It becomes material in the examination of the case under consideration to ascertain what the common law applicable to the principles of this case is.

What the common law is can only be ascertained with any degree of certainty from the decisions of the common law courts on questions similar to the questions involved in any given case.

The counsel on both sides of this case have cited, as the leading case on the doctrine of ancient lights, *Bury* vs. *Pope.* The counsel for the appellants cite the case as reported in 1 Croke, 118, while the counsel for the appellee cites it as reported in Leonard's Reports, 168.

The court decided in this case that adverse enjoyment of lights for a time which must have exceeded thirty years did not give sufficient right to the party enjoying them to enable him to maintain an action for obstructing them. Both reports agree in this. The report in Leonard contains the following, which is not in the report in Croke: "But if it were an ancient window, time out of memory, &c., there the light or benefit of it ought not to be impaired by any act whatsoever," and such was the opinion of the whole court. This case was decided in 31 Elizabeth, which I believe was in the year 1589. What was then decided was that the enjoyment of the window for over thirty years was not sufficient

to enable the plaintiff to maintain his action, and what was said by the court was that if it had been "an ancient window, time out of memory," &c., the action might have been maintained.

What was said by the court in *Bury* vs. *Pope*, was afterwards repeatedly held to be the common law of England. *William Aldred's case,* 5 Coke's Reports, 58; *Hughes* vs. *Kerne,* Yelverton's Reports, 215; *Newhall* vs. *Barnard,* Ibid, 225. In *Aldred's case,* decided in 1812, *Bland's case* is referred to and approved, where it was said by the court in respect to the windows, that "it may be that before time of memory, the owner of said piece of land has granted to the owner of the said house to have the said windows without any stopping of them, and so the prescription may have a lawful beginning."

The last of this class of cases, holding that the use must be time out of mind, referred to, is that of *Newhall* vs. *Barnard,* decided in 1614.

The next case referred to is that of *Darwin* vs. *Upton,* 2 William Saunders, 175 a, in which it was held that the enjoyment of lights, with the defendant's acquiescence, for twenty years, created a presumptive bar to be left to a jury. *Darwin* vs. *Upton* was decided in 1786, and has since been followed by all the cases in England.

It is apparent that the principles of the case of *Darwin* vs. *Upton* are widely different from those of the case of *Bury* vs. *Pope,* in respect to the time of enjoyment to give right. There must be some reason for this difference existing somewhere. Although it has not been referred to in any of the cases the reason must be found in the English statute of limitations, passed in 1623. This statute limits the right of entry into any lands, tenements or hereditaments to twenty years. Certain it is that no case of the class of *Bury* vs. *Pope* has occurred since this statute, nor did any case of the class of *Darwin* vs. *Upton* occur before it. It would seem plain that the modern English rule has been adopted by analogy to this statute.

If this English statute of limitations was ever in force in

Virginia it was repealed by the act of 1792, repealing all British statutes theretofore in force, with certain savings.

The common law of England in force in this State as applicable to the case under consideration must therefore remain as laid down in *Bury* vs. *Pope*, and kindred cases.

The time that the property claimed by Cunningham was in the occupancy of the owners thereof, as we have seen, was from 1803 to 1826, a period of twenty-three years. This is not sufficient time to make the windows in the house now owned by Dorsey ancient, according to *Bury* vs. *Pope*.

The time intervening since 1826 cannot be computed against Cunningham, because for all that time the property was not in the actual occupancy of the owners thereof, but was in the possession and occupancy of their tenants. *Daniel* vs. *North*, 11 East, 372; Washburn on Easements, &c., 493.

The reason for this seems to be that the enjoyment by the owners of the Dorsey house of the air and light admitted by the windows was not the source of any damage to the owners of the Cunningham property for which an action could be maintained by them, and their only remedy was to build a wall or put up some other obstruction on the lot near the windows to obstruct them. This they could not do while the lot was in the possession of tenants without committing a trespass on their rights, which they are not required to do.

So far as my examination has extended I do not find any decision of any court in this country where it has been decided that the common law rule in respect to ancient lights, as settled in the case of *Bury* vs. *Pope*, is or is not in force in any one of the United States, but the principles of the case of *Darwin* vs. *Upton*, as applicable to this country, have been reviewed by the courts of last resort in the States of Maine, Massachusetts, Vermont, Connecticut, New York, Pennsylvania, Maryland, Alabama, South Carolina and Iowa, and have been overruled by the courts of all these States, while upon the other hand they have been reviewed and sustained only in the States of Illinois and New Jersey.

The decree complained of will have to be reversed at the costs of the appellee, and this court, proceeding to enter such decree as the court below ought to have rendered, must dissolve the injunction and dismiss the complainant's bill.

The other judges concurred.

DECREE REVERSED.