# CHARLESTON

KOBLEGARD *et al.*, TRUSTEES *v.* HALE *et al.*

Submitted January 10, 1906.    Decided January 23, 1906.

1.  ADJOINING LANDOWNERS—*Injunction—Light and Air.*
    The owner of land cannot maintain a bill for an injunction against the owner of adjoining land, to restrain him from maintaining a fence of unusual height on his land, on the sole ground that such fence deprives a building on the land of the former of light and air coming laterally from such adjoining land.   (p. 40.)

Appeal from Circuit Court, Lewis County.

Bill by Jacob Koblegard and others against Susan Hale and others. Decree for plaintiffs, and defendants appeal.

*Reversed.*

W. W. BRANNON, for appellants.

ROBERT L. BLAND, for appellees.

COX, JUDGE :

The appellees, trustees of the Methodist Episcopal Church of Weston, West Virginia, filed their bill in the circuit court of Lewis county against appellants, Susan Hale and A. C. Hale, her husband, for an injunction to remove, and prevent the maintenance of, a plank fence twelve feet high along the line of the lot of said Susan Hale, which fronts on Third street in the town of Weston and adjoins the piece of land or lot, fronting on the same street, upon which the congregation of said M. E. Church has in course of con-

struction a beautiful and costly church edifice, to be used as a place of religious worship.

The bill alleges in substance: That the fence, erected and being erected, is a high, rough and ugly plank fence; that immense unhewn posts have been planted in the ground; that the fence has been erected alongside of the large church windows, being ten in number, reaching nearly, if not entirely to the top of said windows; that, after the work of building the church was commenced, the defendant A. C. Hale became much incensed, and declared that the church would have the effect to cut off his light, and that the same was built in order to spite him, but that he would "get even" with the church by building a high fence in front of the windows on the east side of the church building, that he would "shut off their light," and would paint the proposed fence black on the side next to the church; that, pursuant to such threats, and from motives of pure malice and spite, and to annoy, harass and damage the congregation of the church, the fence was commenced and erected; that the fence is unnecessary, and serves no good or proper purpose to the defendants; that the effect of the erection and maintenance of the fence is to shut out the light and air from the said church building on its eastern side, where such light and air are absolutely necessary and essential to the peace, comfort and health of the members of the congregation of the church and others who may attend there for the purpose of engaging in religious worship. The bill contains many other allegations, but we deem it unnecessary to repeat them here. The bill does not allege that the fence was built on the church lot, or that it was not wholly on the lot of appellant Susan Hale, and does not allege that the side of the fence next to the church was painted black.

The appellees do not allege that they, or those for whom they hold the church property, have any interest in the Hale lot, or in the light and air therefrom, other than such rights as they may be entitled to as adjoining land owners.

Upon presentation of the bill, in vacation, to the judge of the circuit court, a preliminary injunction was awarded preventing further work towards the completion of the fence. Afterwards, appellants filed their demurrer to the bill, and also their answer, and moved to dissolve the injunction, and

appellees moved for a mandatory injunction. The cause was heard in term on the 9th day of March, 1905, in the circuit court of said county, and a decree was entered overruling the demurrer and adjudicating that the fence, so far as it operated as an obstruction of light and air in and about the building of appellees, constituted a nuisance, and awarding an injunction against the maintenance, and to compel the removal, of the fence. From this decree Susan Hale and A. C. Hale appeal.

The first question is as to the sufficiency of the bill upon demurrer, considering the allegations of the bill as true. By the bill, the appellees must show their right to maintain the suit. What legal right of the appellees, or of those for whom they hold, has been invaded? What legal right has an owner of one lot or piece of land to the light and air unobstructed, coming laterally to his land or building from his neighbor's land, which the neighbor is bound to respect? The common law of England, touching ancient lights, is not and never has been in force in this State. Section 13, chapter 79, Code; 5 W. Va. 1; 3 W. Va. 293. The doctrine of ancient lights is not relied on to afford appellees relief. Outside of the doctrine of ancient lights, under the common law, it seems that the owner of land has no legal right, in the absence of an easement, to the light and air unobstructed from the adjoining land. At common law, one has the right to build a fence on his own land as high as he pleases, notwithstanding it obstructs his neighbor's light and air. Judge Holmes, then a member of the Supreme Court of Massachusetts, now a Justice of the Supreme Court of the United States, delivering the opinion of the Massachusetts court in the case of *Rideout* v. *Knox*, 148 Mass. 372, said: "At common law, a man has a right to build a fence on his own land as high as he pleases, however much it may obstruct his neighbor's light and air. And the limit up to which a man may impair his neighbor's enjoyment of his estate by the mode of using his own, is fixed by external standards only. *Walker* v. *Cronin*, 107 Mass. 555; *Chatfield* v. *Wilson*, 28 Vt. 49; *Phelps* v. *Knowlen*, 72 N. Y. 39; *Frazier* v. *Brown*, 12 Ohio St. 294; *Martin*, B., in *Rawstron* v. *Taylor*, 11 Exch. 369; *Benjamin* v. *Wheeler*, 8 Gray 409."

"As has been seen, a property owner has no right to the uninterrupted access of light and air to his premises from and over the adjoining land of another, unless such right has been acquired by grant or prescription. It follows that an obstruction of these elements by the adjoining owner, by building on his own land, is not a legal injury and is not actionable." 19 Am. & Eng. Enc. L. 122.

"According to the received view of the common law, the erection of a fence upon one's own land is not an actionable injury to one's neighbor, although the erection may deprive him of light and air and may be dictated by motives of ill-will." 12 Am. & Eng. Enc. L. 1058.

"The making of openings or windows, in a house or wall abutting on or overlooking adjoining land, confers no right to the access of light and air over the adjoining land which the owner thereof is bound to respect. The doctrine of the common law is, that an adjoining owner may deprive his neighbor of the light coming laterally over his land, by the erection of a wall or other structure thereon, within the period of prescription, though he does so for the purpose of darkening the windows and obstructing the passage of light and air; and, except where this rule has been changed by statute, there is no legal injury by such an obstruction." 1 Cyc. 788. To support that doctrine, cases decided by courts of last resort are there cited from the states of Alabama, California, Delaware, Georgia, Illinois, Iowa, Kansas, Louisiana, Maine, Massachusetts, Mississippi, New Jersey, New York, Ohio, Pennsylvania, South Carolina, Texas, Vermont, and West Virginia, and from England; the case cited from West Virginia being *Cunningham* v. *Dorsey*, 3 W. Va. 293. In the same work, at page 789, it is said: "If an erection which deprives the adjoining owner of light and air is lawful, it is not *per se* a nuisance, and the law will not inquire into the motive with which the erection was made." See, also, 2 Washburn on Real Prop., section 1278.

In the case of *Letts* v. *Kessler*, 54 Ohio St. 73, it is said: "The case is not like annoying a neighbor by means of causing smoke, gas, noisome smells or noises to enter his premises, thereby causing injury. In such cases something is produced on one's own premises and conveyed to the premises of another; but in this case nothing is sent, but the light and

air are withheld.   A man may be compelled to keep his gas, smoke, odors and noises at home, but he cannot be compelled to send his light and air abroad.''

There are many uses of land by the owner which may invade the rights of others to their injury, and which constitute private nuisances; but the common law does not recognize the case here presented as one of them.   It is not claimed that, by virtue of any statute, grant or easement, appellees are entitled to maintain this bill against the obstruction of light and air coming laterally from the adjoining lot. We do not think that the motive or intent of appellants in building the fence is material, in determining what right appellees have in the light and air the obstruction of which they seek to enjoin.

The case of *Medford* v. *Levy*, 31 W. Va. 650 is relied upon to support appellees' contention.   We think it does not apply.   That was not a case for obstructing light or air.   It was a bill for the prevention of offensive odors and many other acts, some of which at least were considered to be invasions of the complainants' rights in that case.   The syllabus of the case must, of course, be read in the light of the opinion.   We think that it is clear, under the authorities, that the appellees have failed to show, by the allegations of the bill, any right to maintain this suit.   The only object of this bill is an injunction against the maintenance, and to compel the removal of, the said fence.

We must, for the reasons stated, hold the bill insufficient in law, reverse the decree complained of, sustain the demurrer, and dismiss the bill.

*Reversed.*

NOTE BY BRANNON, JUDGE :

Counsel for the church claims that the pith of the case on that side, its strength, lies in the fact that Hale erected the fence from malice and spite.

As Hale owned the property she had the legal right to build the fence, even though the intent were that ascribed to her.   Authorities given in *Transportation Co.* v. *Oil Co.*, 50 W. Va. 611, will go far to sustain this position.   Justice Brown in *Canfield* v. *United States*, 167 U. S. p. 523, whilst

expressing some condemnation of the law, was compelled to say: "It is true that a man may build a fence upon his own land as high as he pleases, even though it obstructs his neighbor's lights, and the weight of authority is that his motives in so doing cannot be inquired into, even though the fence be built expressly to annoy and spite his neighbor; and, that in this particular, the law takes no account of the selfishness or malevolence of individual proprietors; *Mahan* v. *Brown,* 13 Wend. 261; *Chatfield* v. *Wilson,* 28 Vt. 49; *Frazier* v. *Brown,* 12 Ohio St. 294; *Pickard* v. *Collins,* 23 Barb. 444; *Clinton* v. *Myers,* 46 N. Y. 511; *Phelps* v. *Nowlen,* 72 N. Y. 39; *Walker* v. *Cronin,* 107 Mass. 555, although there are many strong intimations to the contrary." Much authority sustains this. *Metzer* v. *Hochran,* 50 L. R. A. 305; *Kusnick* v. *Kozminski,* 65 Am. St. R. 344; *Lester* v. *Kessler,* 40 L. R. A. 177. If you decide otherwise you detract from the right of property. "The motives of one who exercises a legal right cannot be inquired into." *Letts* v. *Kesler,* 54 Ohio St., 73; 3 Am. & Eng. Dec. in Eq. 579.