# CHARLESTON.

HENSHAW *v.* GLOBE & RUTGERS FIRE INS. Co.

(No. 6685)

Submitted May 7, 1930. Decided May 20, 1930.

236

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for plaintiff in error.

*B. J. Pettigrew* and *Jo N. Kenna,* for defendant in error.

LIVELY, PRESIDENT:

In an action instituted in the circuit court of Kanawha county by S. B. Henshaw, special receiver for Charleston Kissel Company, a corporation, to recover for losses sustained in a fire, under a blanket automobile insurance policy issued by the Globe & Rutgers Fire Insurance Company, the jury awarded plaintiff a verdict of $9,578.70. A motion for a new trial was overruled, and the defendant prosecutes error.

Charleston Kissel Company was incorporated June 19, 1926, and was successor to Blancett Motor Company, in both of which A. G. Swearingen (appointed by defendant as its agent in August, 1927) was a stockholder and officer. Through Swearingen & Co. an automobile insurance policy had been issued by the Home Fire & Marine Insurance Company to Blancett Motors or Blancett Motor Company. By arrangement between that insurance company and defendant, the latter, on November 16, 1926, assumed the risk on a number of policies which had been written by Swearingen & Co. Policy

No. 133472, which Swearingen testified is that issued to Blancett Motor Company, was included in the schedule of risks assumed by defendant, but no description or ownership of the property was shown therein. The schedule contained the notation, relating to policy No. 133472, "information to come later." E. P. Douglass, state agent for defendant, approved the reinsurance, as is evidenced by his letter of November 16, 1926, to the Home Fire & Marine Insurance Company, but testified that there was no way of his ascertaining from the schedule that any policies of either the Blancett Motor Company or the Charleston Kissel Company were included, and that no information to that effect ever came to him from any other source. But Swearingen testified that shortly after November 16, 1926, Douglas and he discussed the Charleston Kissel risk, stating: "In the first place, the discussion came up through my lack of adequate rates on my own automobile. I had written to the company and I asked him personally to see if he could endeavor to get me some rates. Eventually he did get them. I told him I was having trouble over there with my writing policies on my own car and other Kissel cars on account of the lack of rates. Mr. Douglass said he would take that up with the company, and we discussed that very thoroughly"— and testifying further that at this time Douglass was fully advised of his (Swearingen's) connection with the Charleston Kissel Company. That policy expired on January 16, 1927. Meanwhile, on December 24, 1926, Swearingen and Floyd Hieatt entered into an agreement with the Charleston Kissel Company for the purchase of the physical assets of said company; that agreement was later repudiated by them, but a new agreement, dated January 3, 1927, and acknowledged by Hieatt and Swearingen on January 24, 1927, was made, whereby N. Barrack, Jr., and C. B. Lair transferred their interest in twelve shares of stock of the Charleston Kissel Company, thus placing with the purchasers all the stock of said company except one share. On January 17, 1927, Swearingen, as defendant's agent, issued to Charleston Kissel Company and Builders' & Traders' Discount Company a policy of fire insurance of $50,000 covering the automobiles contained in a building in which the business of the Charleston Kissel Company was then

being conducted. At the time of this action, the discount company had released its interest to any insurance money that the Charleston Kissel Company might receive from defendant.

On February 14, 1927, the defendant from its New York office wrote Swearingen for information concerning the type of construction of the building in which the cars covered by the policy were contained. No reply having been received, defendant wrote again on March 5, 1927, and on March 10, 1927, wrote Swearingen advising him that, "owing to the physical hazard of the building occupied by the above assured we request that you relieve us of liability under this policy at your earliest convenience. Kindly forward cancelled policies to this office in order that we may complete our records." Between 10 and 11 o'clock of the evening of the same day, a fire occurred in the building occupied by the Charleston Kissel Company, causing the damage complained of in this action. E. P. Douglass requested that the General Adjustment Bureau look after defendant's interest in the fire, but the New York office sent Van Fleet, claim adjuster, to appraise the loss, which was reported as a "compromise settlement" at $8,700; said amount having been accepted by Hieatt, who stated he accepted with the understanding that defendant would pay that amount. Van Fleet testified he meant by "compromise settlement" a compromise settlement of the amount of damages; that his original figures were $7,000, which amount was approximately $1,000 more than the Blue Book value, and that he had no authority to bind the company to pay the said $8,700; that he did not raise the amount to meet the $16,000 demand of the Charleston Kissel Company, but that Hieatt and Swearingen convinced him that there were several cars on which he should raise the appraised damage.

On March 26, 1927, A. G. Swearingen, president, wrote a letter to E. P. Douglass, in which was stated: "This is the first opportunity we have had of really being served by the Globe & Rutgers Company, and I am disappointed. Especially as in this case I occupied the unenviable position of being both agent and assured." This letter was transmitted by Douglass to his company, and upon trial defendant tendered to plaintiff the amount of the premium and denied liability on the ground

that the policy was unenforceable because of Swearingen's dual agency without notice thereof to defendant insurance company, also because Hieatt and Swearingen, as officers of the company, and the owners and holders of all its capital stock, were involved in the origin of the fire. The evidence does not sustain the latter defense. The fire was admittedly of incendiary origin. Capp, an employee of the automobile company, testified that Farley, bookkeeper for Charleston Kissel Company, delivered to him a car for his starting the fire, which Capp retained for several months after the fire and after Swearingen knew that he had the car. Both Capp and Farley were later indicted, but neither has been tried. It is not clearly determinable for what purposes or for whose benefit the fire was caused. Van Fleet reported that there was a shortage in the accounts, although the records were destroyed.

The principal inquiry, however, concerns Swearingen's dual relation. Plaintiff contends that disclosure of the dual role was made to defendant, Swearingen attempting proof thereof through alleged conversations between himself and Douglass. It is admitted that Douglass was defendant's agent, but it is contended his authority did not extend to the automobile insurance business. Douglass testified: "The only duties I have in reference to the automobile business is to appoint an agent. The business is sent to the office. If they have any criticisms they send me a slip and tell me to investigate it. Then I take my report to them." He further stated he had charge of the general fire insurance business. Swearingen stated that all automobile policies were sent from his office directly to defendant's office in New York City, and there is no evidence that, prior to the fire, Douglass had any knowledge that the policy of January 17th had been issued. Swearingen testified that Douglass' duties were as follows: "He passes on all risks. Daily reports of the fire business go directly through his office and his approval or disapproval in 99 cases out of 100 is accepted by the company. It is his duty to follow up all inspections referred to him and act on all risks, moral, physical or otherwise." Likewise he testified that Douglass knew of his relationship with the Blancett Motor Company and with the Charleston Kissel Company; that he told Douglass

in Parkersburg that he and Hieatt had taken over the Charleston Kissel Company. Swearingen's stenographer testified that she overheard a conversation between Swearingen and Douglass relating to Hieatt's and Swearingen's purchase of the Charleston Kissel Company. Douglass, however, denied having had or heard any discussion of Swearingen's interest in either the Blancett Motor Company or Charleston Kissel Company, but said: "In one discussion he said he was thinking about taking the agency for the Kissel car. In Parkersburg he said he was up there to find an agent for the Kissel car—not the company." Defendant had received a credit report which showed the names of persons interested in the Charleston Kissel Company, but which gave Swearingen's name as "Swanger."

Plaintiff argues that retention of the unearned premium after the loss and after complete knowledge of the circumstances estops defendant's denial of liability. The policy involved here provided that "the policy shall be void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance." Assuming there was no notice given to defendant of Swearingen's relation with the Charleston Kissel Company, such concealment would have vitiated the policy and would have, under its terms, made it a nullity ab initio; its legal existence having been eliminated, ratification would be precluded, and plaintiff left to pursue a civil action to recover the premium.

The pertinent inquiries in the cause relate to the scope of Douglass' agency and to Douglass' knowledge of Swearingen's dual agency. Plaintiff submits that the jury resolved these questions in its favor. The court instructed the jury (instructions 4 and 5) to find for defendant "unless the jury believe from the evidence in this case that the fact of such interest of said Swearingen in said Charleston Kissel Company was made known to the defendant company before it approved the issuance of said policy or that the defendant company after the issuance of such policy, with full and complete knowledge of all the facts with relation to the interest of said Swearingen in said Charleston-Kissel Company and his connection therewith, affirmatively ratified the act of said Swearingen in issu-

ing said policy." It is not shown how long a time the court intended by "after the issuance of such policy." Clearly, knowledge after the fire would not be sufficient. Defendant offered, and the court refused, an instruction that defendant would not be bound by information of Swearingen's dual agency after the fire. We therefore cannot subscribe to plaintiff's contention that the jury's finding concluded that defendant had such knowledge prior to the fire. We are aware that instruction No. 6 charged the jury that the existence of a policy prior to January 17, 1927, had no materiality in the cause if the defendant did not have full knowledge of Swearingen's relation with the Charleston Kissel Company at the time the business was reinsured. But all instructions must be read together (*Styles* v. *Ry. Co.*, 62 W. Va. 650, 59 S. E. 609, second point of the syllabus); and, in view of instructions 4 and 5, we can but presume that the evidence of information after the fire was considered by the jury. It was clearly error to have refused instruction No. 12, and for that reason, the judgment is set aside, reversed, and the cause remanded.

*Reversed and remanded.*