S. B. HENSHAW, *Special Receiver, etc. v.* GLOBE & RUTGERS FIRE INSURANCE COMPANY

(No. 7085)

Submitted September 13, 1932. Decided September 27, 1932.

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for plaintiff in error.

*J. N. Kenna* and *B. J. Pettigrew,* for defendant in error.

LIVELY, JUDGE:

A jury found for plaintiff on a former trial; judgment was rendered thereon by a special judge, from which defendant prosecuted error to this court and obtained reversal because of error in the instructions. *Henshaw* v. *Fire Ins. Co.,* 109 W. Va. 235, 153 S. E. 512. Upon new trial, May 9, 1931, a jury was waived and the case submitted to the regular judge, upon the evidence taken at the first trial before the special judge, who rendered judgment for plaintiff for $10,775.75, and defendant again prosecutes error.

The issue raised by defendant's special pleas is that Swearingen, who was the agent of defendant, insured the automobiles while he owned a one-half interest in them; that he insured his own property, acting in a dual capacity, without disclosure to defendant, thereby discharging defendant from liability. Defendant says it had no notice or knowledge that Swearingen had any interest in the automobiles insured; while plaintiff contends that defendant did have such notice and knowledge through Douglass, its state agent.

The trial judge found that defendant did have notice of the dual agency, and defendant now asserts that the clear preponderance of evidence is to the contrary.

The policy was issued on January 17, 1927, and was upon the same property formerly insured by a policy issued by Swearingen as agent for Home Fire & Marine Insurance Company to Blanchett Motors dated January 16, 1926, and which expired January 16, 1927. Defendant, on November 16, 1926, took over the risks of the Home Fire & Marine Insurance Company in about thirty-six fire insurance policies written through Swearingen (agent for the latter company) including a policy of $50,000 dated January 16, 1926, to Blanchett Motors on its stock of new and used cars. Douglass, defendant's state agent, negotiated and effected the transfer of the risks from the Home Fire & Marine Insurance Company. Prior to this assumption of risks by defendant, in May, 1926, Blanchett Motors was incorporated as "Blanchett Motor Car Company" at which time Swearingen became the nominal owner of one share of stock, and was selected as director and president, although it seems he was director and president only in name. Prior to that time he had no connection with Blanchett Motors which was agent for and sold Kissel motor cars. Then, on June 9, 1926, "Blanchett Motor Car Company" changed its corporate name to "Charleston-Kissel Company, Inc.," which is plaintiff here through Henshaw, its receiver. On December 24, 1926, Swearingen and a Mr. Hieatt entered into a contract with Charleston-Kissel Company to purchase its physical assets. This contract was not consummated, and on January 24, 1927, they purchased the capital stock, effective as of January 3, 1927, with the exception of a share or so, making them equal joint owners. February 14, 1927, defendant, at its office in New York City, wrote Swearingen, its agent, asking for the type of construction of the building which housed the cars insured by him January 17, 1927. Receiving no reply, it again wrote him on March 5, 1927, asking for reply. Swearingen answered March 7th, describing the building as one story frame with composition roof, and saying that such information had been written them on February 16th. On

March 10th, defendant wrote Swearingen to release it from liability because of the physical hazards of the building occupied by the assured. Before this letter was received the fire loss occurred between ten and eleven o'clock P. M. of March 10th. The next day, Douglass, defendant's state agent, who lived at Parkersburg, and who happened to be in Charleston, requested the General Adjustment Bureau to look after defendant's interests. However, defendant sent its own adjuster and plaintiff, though claiming a loss of over $16,000, agreed with him upon a compromise settlement of $8,700. Defendant did not promptly pay the settlement recommended by its adjuster, because the State Fire Marshall was investigating the fire which was evidently of incendiary origin, suspicion pointing strongly to some employees of plaintiff company, but not to Swearingen or Hieatt. On March 26th, Swearingen wrote Douglass saying he was disappointed in defendant, "especially as I occupied the unenviable position of being both agent and . assured." Defendant, claiming that this was the first knowledge it had of the dual relationship of Swearingen, refused to pay the sum agreed upon by its adjuster, and this suit followed.

The policy contract was · voidable because of the dual agency, and defendant had the right to repudiate it, upon discovery of the dual relationship. *Truslow* v. *Parkersburg, etc.,* 61 W. Va. 628; 57 S. E. 51. It claims that it had no knowledge thereof until after the fire, when it received Swearingen's letter of March 26, 1927. It knew, of course, that it had a policy covering the automobiles owned by Charleston-Kissel Company, for the policy itself so told them. This policy, it must be remembered, was upon the same property insured by the Home Fire & Marine Insurance Company for one year dated January 16, 1926, to Blanchett Motors, or Blanchett Motor Car Company, liability for which defendant had assumed on November 16, 1926. But it says that it never knew that Swearingen had any connection with Blanchett Motor Car Company or Charleston-Kissel Company (both of which were insured) until after the fire, as above set out. On the contrary, plaintiff asserts that defendant had knowledge that Swearingen had connection with, and

interest in, both Blanchett and Charleston-Kissel before January 17, 1927, (the date of the policy sued on) and after its issuance but before the fire through Douglass, its state agent. This was the issue of fact, decided by the trial court in favor of plaintiff, and to the evidence on this important issue we now advert.

Prior to November 16, 1926 (when defendant assumed risks of Home Fire & Marine Insurance Company), Swearingen, as an insurance agent, had issued several fire policies for the Home Fire & Marine Insurance Company, one of which was the blanket policy of $50,000 on the cars owned by Blanchett which policy was numbered 133472. Thirty-five of these policies, including No. 133472, were assumed by defendant on November 16, 1926, through its state agent Douglass, who conducted the deal. On the schedule of risks assumed, this $50,000 policy, No. 133472, was listed (by number only) with the notation, "information to come later". In August, 1926, Douglass appointed Swearingen as defendant's agent in Charleston, and it was by virtue of this appointment and agency that the policy sued on, issued January 17, 1927, was written. According to Swearingen's testimony, when Douglass entered the former's office for the purpose of appointing him as agent for defendant, he, Swearingen, told Douglass of his connection with Blanchett Motor Company in order to advise that he was in no way retiring from the business of insurance agent. He said that Douglass brought up the matter of his connection with the motor company, and he hastened to disabuse any impression that Douglass might have with respect to his efficiency as an agent by reason of his connection with Blanchett Motor Company. He says that later, about the first of January, 1927, Douglass again visited his place of business after he became interested in Charleston-Kissel Company at which time the Blanchett Motor Company had changed its name to Charleston-Kissel Company, and he told Douglass of his connection with the Charleston-Kissel Company. He says that they discussed his interest in the Charleston-Kissel Company, how that business was being conducted, how it was going, and what the prospects were. He said that he told

Douglass in the conversation that Hieatt had sold out his coal business and was entering the automobile business and that he, Swearingen, was going into the business with him. Miss Cablish, a stenographer, corroborated Swearingen in respect to the conversation. She said that Douglass upon seeing an advertisement that Swearingen and Hieatt had purchased the Kissel place asked Swearingen if he was going out of the insurance business and into the automobile business, and that Swearingen explained that he had bought an interest in the place; that Hieatt would manage the business, and that he, Swearingen, would keep his insurance business. Later, about the middle of February, 1927, Swearingen says that he went to Parkersburg to establish an agency for the Kissel cars and called on Douglass with whom he again discussed the prospect of the business, and what the prospects would be in Parkersburg; told him that he and Hieatt had taken over the Charleston-Kissel Company, and consulted him about getting a good dealer for the Kissel cars in that city. Douglass denied that he had these conversations, and denies that he ever knew that Swearingen was interested in either the Blanchett or Charleston-Kissel Company until after the fire. His explanation of his actions in visiting the place of the fire the next morning thereafter, was that he happened to be in Charleston the night of the fire, and next morning read the newspaper account of it, and was told by some insurance man on the street that defendant company had insured the burned property; that he then went to Swearingen's office (both Swearingen and Hieatt were not in town) and ascertained that his company had issued a policy on the property, and immediately took steps to protect its interests. He testified that he had no duties connected with the automobile insurance of his company, except when it directed him to make some investigation; that he appointed the local agents; that he had charge of the general fire insurance business in the state, but that all automobile business was transacted by the agents with the office of the company in New York. Swearingen admitted that automobile policies were sent from his office direct to defendant's office in New York. Swearingen says that Douglass passed on all risks;

that daily reports of the fire business went to his office for approval or disapproval; that it was his duty to follow up all inspections referred to him and act on all risks, "moral, physical or otherwise". Defendant company, through its officers, testified that Douglass had no control over the automobile fire insurance, and no duties connected with that department, unless specially referred to him. On this evidence, plaintiff asserts that defendant, through its state agent, Douglass, had notice that Swearingen was interested in the Charleston-Kissel Company at the time of the issuance of the policy sued on, and accept the policy knowing of his dual agency; and that after it was issued, they had knowledge of Swearingen's dual agency and ratified it by acquiescence.

It must be kept in mind that this dual agency did not begin until the issuance of the policy sued on, dated January 17, 1927. Prior to that time, dual agency did not exist. The policy issued to Blanchett Motors by Swearingen, Agent of Home Fire & Marine Insurance Company, on January 16, 1926, and afterwards assumed by defendant on November 16, 1926, was not affected by dual agency for at that time, Swearingen had no financial interest in Blanchett; and the fact that he afterwards, about the first of January, 1927, acquired an interest in the property insured would not vitiate that policy. An agent is not prohibited from purchasing property on which he had theretofore issued a fire policy. Had the fire occurred within the life of the first policy, the fact that Swearingen had purchased an interest in the property subsequent to its issuance would not have defeated his recovery because of dual agency, for none existed at the time it was issued. If we assume that Douglass had information that Swearingen had purchased an interest in the Charleston-Kissel Company, and he knew that the Blanchett policy covered the property, this knowledge would not vitiate that policy. He could not condone, waive or ratify a dual agency which did not exist. He says that he did not know that policy No. 133472 listed by that number only in the bordereau of the policies taken over from Home Fire & Marine Insurance Company by defendant, was a

policy on Blanchett Motors property; but even if he did know it, we can see no effect that knowledge would have on that policy. The crux of the case is whether defendant company knew that Swearingen was the owner of the cars which he insured on January 17, 1927, by the policy sued on. There is no evidence that Douglass knew of the existence of this policy. It was issued and sent direct to the defendant company at New York. Then was the time for Swearingen to make full disclosure that he was insuring his own property; that he was entering into an insurance contract for his own protection and benefit—his dual relationship. That dual relationship came into existence then for the first time. If, prior to that time, Douglass knew of Swearingen's interest in Charleston-Kissel Company, we can see no reason why he should report that fact to his company. Could he assume that Swearingen at some future date would act as both assurer and assured direct with the company without full disclosure? Swearingen claims to have told Douglass of his interest in Charleston-Kissel Company about January 1, 1927 (although he claims to have acquired full interest on January 24, 1927, seven days after the policy was issued). He could have disposed of that interest before he acted in dual capacity. The time for full disclosure was when he acted in the dual capacity. He may, or may not, have been the owner of the interest on the date of the policy. We do not think that Douglass would be compelled to assume that Swearingen would continue his ownership, and that he would act in a dual capacity without disclosure if and when he attempted in the future to obtain insurance on property owned by him.

Taking it as a fact that about the middle of February, 1927 (or some date after January 24, 1927, and before the fire, March 10, 1927, as stated by Swearingen), Swearingen told Douglass of his interest in the Charleston-Kissel Company at Parkersburg, and before the issuance of the policy sued on Douglass was informed of the ownership, or negotiations for purchase, of Swearingen and Hieatt in the Charleston-Kissel Company, the evidence is rather meager that Douglass knew that his company carried a policy on either the Blanchett or Charleston-Kissel Companies. He says he

did not know. He knew on October 16, 1926, that his company had assumed the risks of Home Fire & Marine Insurance Company on policy No. 133472 with notation thereon of "information to come later", which information never came. When the policy sued on was issued January 17, 1927, it was sent by Swearingen direct to the New York office and did not pass through Douglass' hands. He had nothing to do with inspection or approval of automobile insurance policies. Under these facts, can knowledge of the dual agency be imputed to defendant through Douglass? We perceive no duty on Douglass to report to his principal the fact, casually gleaned, that Swearingen owned a one-half interest in the Kissel Company, when he did not know that a policy was in existence on the property of that company. Tiffany on Agency, p. 262; Mechem on Agency (1st E.), secs. 718, 721. The law of ratification of the acts of an agent by acquiescence requires full knowledge of all material facts on the part of the principal. In order to vivify his contract, voidable because he was insuring his own property, burden was on plaintiff to establish by a preponderance of evidence that full knowledge of all the material facts were known by Douglass or his principal and which pointed indubitably to knowledge of the fact that Swearingen, the agent, was insuring his own property. Fair dealing between agent and principal would demand that Swearingen when he wrote the policy on his own property should have made full disclosure, and not left the knowledge of that important fact to imputation from casual conversations with its agent when the matter of the dual relationship was not the subject or purpose of the conversations. We do not think plaintiff has carried the burden of showing ratification by acquiescence. It is argued that the trial court, sitting in lieu of a jury, has found the fact to be that defendant, through its agent Douglass, had full and complete knowledge of all the material facts, and ratified by acquiescence the dual relationship. It must be remembered that the trial judge did not hear the witnesses nor see their demeanor. He acted upon the printed record of a trial conducted by a special judge.

The same printed record on which the trial court acted is now before us.

The general rules of agency apply as between an insurance agent and his company. As between himself and his principal, his acts will not be binding where they are to his own interests and against the interests of his principal, unless he acts with the latter's knowledge and consent, or by its ratification. 32 C. J. 1071, sec. 149; Cooley's Briefs on Insurance, 2nd Ed., p. 480. There can be no ratification by acquiescence unless the principal has full and complete knowledge of all the material facts connected with the transaction. Mechem on Agency, sec. 129; *Owings* v. *Hull,* 9 Peters 607; *Thompson* v. *Mfg. Co.,* 60 W. Va. 42, 53 S. E. 908, annotated in 6 L. R. A. (N. S.) 311.

It is argued that the decision on the former appeal adjudicated the case in favor of plaintiff. The opinion simply sets out the contentions of the parties and the evidence on which based, and makes no disposition of the issues, except to hold that those issues were submitted to the jury on improper, instructions. We simply found error, and did not express any opinion on the merits.

Upon examining the record on the first writ of error, we find that plaintiff in error therein (Insurance Company) had been refused a peremptory instruction offered in its favor, and that refusal was presented as a point of error by that record. It was not dealt with specifically and no mention was made of it in the former opinion, and plaintiff's counsel, of high standing at the bar and learned in the law, assuming that the point of error had been impliedly decided in their client's favor did not attempt by new evidence or circumstances to show full and complete knowledge by defendant of all material facts connected with the transaction which would impel a conclusion of ratification by acquiescence on its part. While the statute (Code, 58-5-21), requiring "every point fairly arising upon the record of the case shall be considered and decided; and the reasons therefor shall be concisely stated in writing and preserved with the record of the case, and it shall be the duty of the court to prepare a syllabus of the points adjudicated'', etc., is directory *(Horer*

v. *Amick,* 64 W. Va. 172, 61 S. E. 40) and there was no discussion of the point involved in the opinion, and nothing in the syllabus, relating thereto, counsel has been misled to their client's prejudice, and interpreted the opinion and mandate to mean that they had made out a case for recovery. As above stated, we simply found error clearly calling for reversal, and expressed no opinion on the merits. In *Laidley* v. *Kline,* 23 W. Va. 565, a chancery cause, it was held in syllabus 3: "When there is any ambiguity or uncertainty as to the meaning and effect of a decree of this Court in a cause in which it reverses the decree of the inferior court and remands the cause for further proceedings to be had in accordance with the principles settled in the written opinion of this Court, it is proper for such inferior court, or this Court, on a subsequent appeal in the cause, to examine the said written opinion in order to ascertain the true meaning and effect of the decree of reversal and mandate of this Court." We can see no good reason why that principle should not apply here. But as it is apparent that counsel have given the opinion and mandate an interpretation not intended, and have been honestly misled to their client's apparent prejudice, and therefore did not attempt by new evidence or circumstances to show full and complete knowledge on the part of defendant of all material facts connected with the dual agency, we have concluded not to enter a judgment of nil capiat here, but to set aside the judgment, and remand the cause for new trial.

*Reversed and remanded.*