### KAUF v. GREAT ATLANTIC & PACIFIC TEA CO. et al.

### Civ. A. No. 571.

District Court, S. D. West Virginia.
Feb. 26, 1946.

M. O. Litz and R. A. Blessing, both of Charleston, W. Va., for plaintiff.

Dayton, Campbell & Love and Charles M. Love, Jr., all of Charleston, W. Va., for defendant Great Atlantic & Pacific Tea Co.

Brown, Jackson & Knight and W. T. O'Farrell, all of Charleston, W. Va., for defendant Kroger Grocery & Baking Co.

MOORE, District Judge.

This is an action for malicious prosecution in which a jury returned a verdict against both defendants in the amount of $1,500. Defendants have moved for judgment notwithstanding the verdict, and in the alternative to set aside the verdict and grant them a new trial. Several grounds are mentioned in support of their motion, none of which I consider to be meritorious except the one relating to the authority of defendants' agents to bind the defendants by the agents' participation in the alleged malicious prosecution.

At the trial of the case I gave a charge to the jury, which, among other things, told them in effect that the evidence would sustain a verdict against the defendants on the theory that the agents acted within the scope of their authority. My natural inclination is to justify that portion of the charge; but on full consideration of the facts and the law applicable thereto, I am forced to the conclusion that the charge was erroneous, and that defendants' motion for judgment notwithstanding the verdict must be sustained.

The facts are briefly as follows:

Plaintiff was under suspicion of having forged and cashed a check at the store of a merchant other than either of the defendants. Hampton, a member of the West Virginia Department of Public Safety, who was making the investigation, learned that the defendants Kroger Grocery and Baking Company (hereinafter called "Kroger") and the Great Atlantic and Pacific Tea Company (hereinafter called "A. & P.") had in their possession other forged checks which had been cashed in the same vicinity by a person of the same general description as the person who had cashed the forged check under investigation. Hampton took the plaintiff to the respective places of business of Kroger and A. & P. for the purpose of attempting to secure an identification. Quicksall, who had cashed the forged check presented at Kroger's store, stated that he thought plaintiff was the person for whom he cashed it. Plaintiff's evidence was that after Quicksall had made this tentative identification, and while she was alone with him, he said to her that he knew that she was not the person, but intended to testify that he believed she was.

Mrs. Spaulding, the agent of A. & P., who had cashed the forged checks presented at its store, made a positive identification of plaintiff at first sight, though plaintiff was then sitting in an automobile and Mrs. Spaulding was looking at her through the glass windows of the car. It was in evidence that Mrs. Spaulding had cashed two of the forged checks for a person who she said was the plaintiff; that these were cashed three or four days apart; and that the person presenting the checks had used different names on each of the two occasions.

Plaintiff was indicted on the evidence of Mrs. Spaulding and Hampton, and at the trial Quicksall and Mrs. Spaulding testified substantially according to the statements they had made when questioned by Hampton; that is, Mrs. Spaulding made a positive identification and Quicksall testified that he thought plaintiff was the person for whom he cashed the forged check, but would not be positive. Plaintiff was acquitted of the charge.

Quicksall was assistant local manager of the Kroger store with authority to cash checks, and Mrs. Spaulding occupied substantially the same position with A. & P.

The jury were instructed that if they believed the purported identification of the plaintiff by Quicksall and Mrs. Spaulding was dishonestly made, or was made wantonly and recklessly and without regard for plaintiff's rights, they might find a verdict against the defendants or against that defendant whose agent they might believe had so acted. This charge resulted in a verdict against both defendants as already stated.

The question to be decided upon this motion is whether under the evidence the jury could have found that the agents of defendants were acting within the scope of their authority. There was no evidence tending to show that defendants or either of them ever ratified the acts of the agents, or that they ever knew or suspected that the

identification by the agents was made other than honestly and in good faith.

The general law applicable to a situation of this kind is stated in 34 Am.Jur., page 758, § 89: "* * * it is ordinarily held that the criminal prosecution of an offender, even where the offense was against the property of the principal, is not within the scope of an agent's employment. In doing such act the agent acts in response to his duty as a citizen to see that public justice is done by punishing the offender. He by such an act does not, in theory of law, seek to punish the supposed thief because of the wrong to the principal, but because of the wrong to the state. A distinction is to be made in this connection, however, between those cases in which the action of the agent could have no effect other than the punishment of the offender, and those in which the act was done with a view to the recovery of the principal's property or the protection of his business. Authority for the act may be implied where the action is taken by the agent in the absence of the principal for the protection of property that is in danger, and in some cases it has been inferred when the action is to recover the property back, or where the crime was at the time being perpetrated. On the other hand, the trend of the decisions is against holding the principal liable when the prosecution is instituted after the supposed crime has been committed, and not for the protection of his property or interests; in such cases the agent has been presumed to act on his own account, for the vindication of justice, and there is no liability on the part of the employer unless there is shown either that there was express precedent authority for doing the act, or that the act has been ratified and adopted. An employer's silent acquiescence in the act of his servant has been held to constitute a ratification thereof in some instances, but not in others."

 In all of the cases which I have examined upon the subject the principle is followed that in order to hold the employer liable for the act of an agent in initiating or participating in a malicious prosecution, it must have been undertaken by the agent either for the protection of the employer's property or for the purpose of recovering property for the benefit of the employer. Where there is no other purpose in mind than to aid the duly constituted authorities in prosecuting and punishing a supposed offender (even though the act of giving aid is malicious and coupled with knowledge that the supposed offender is not guilty, or done with a wanton and reckless disregard of his rights) the agent is presumed to act on his own account, and in the absence of precedent authority or subsequent ratification there is no liability on the part of the employer. Thus, in the case of Wolford v. Goldey Bros., Inc., 114 W.Va. 259, 171 S.E. 537, relied on by the plaintiff, defendant's agent had turned over to the operator of a collection agency a dishonored check for collection. The collection agent having instituted a criminal prosecution under the Bad Check Statute, and Wolford having been acquitted, recovery in an action for malicious prosecution was sustained. In the case of Lyons v. Davy-Pocahontas Coal Co., 75 W.Va. 739, 84 S.E. 744, the act of the agent consisted in having Lyons arrested on a warrant charging trespass on property, and the testimony showed that this was done solely for the purpose of getting him off the coal company land, which, being concerned with the use of the coal company property, was held to be an act within the scope of the agent's authority.

Fetty, etc. v. Huntington Loan Co., 70 W.Va. 688, 74 S.E. 956, was a case in which Fetty was arrested on a warrant sworn out by an agent of Huntington Loan Company, charging him with obtaining money by false pretenses. The facts in that case, as set out in the opinion, clearly show that the purpose of the prosecution was to recover the sum of $18.50, being the amount which Fetty was shown to have obtained by reason of the alleged false pretenses, and not to prosecute and punish Fetty for the alleged criminal offense.

I am of opinion that the law in West Virginia as to the liability of a principal for the acts of his agent in setting on foot or participating in a malicious prosecution is as stated in the case of McKain v. Baltimore & Ohio R. Co., 65 W.Va. 233, 64 S.E. 18, 19, 23 L.R.A.,N.S., 289, 131 Am.St.Rep. 964, 17 Ann.Cas. 634, as follows:

"The line of distinction, sometimes hard to recognize under the circumstances of the particular case, marks the point at which the act ceases to be one of service to the employer, and becomes one of vindication of public right or justice, the apprehension or punishment of a wrongdoer, not for the injury done to the employer, but to the public at large. Perhaps the clearest and best statement of it is that given by the eminent English Jurist Blackburn, in Allen v. Lon-

don, etc., Ry. Co., L.R. 6 Q.B. 65, as frequently quoted by the American courts: 'There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony or of recovering it back and an act done for the purpose of punishing the offender for that which has already been done. There is no implied authority in a person having the custody of property to take such steps as he thinks fit to punish a person who he supposes has done something with reference to the property which he has not done. The act of punishing the offender is not anything done with reference to the property. It is done merely for the purpose of vindicating justice. And in this respect there is no difference between a railway company —which is a corporation—and a private individual. If the law were that the defendants are responsible for the act of their booking clerk in giving the plaintiff into custody on an unfounded charge, every shopkeeper in London would be answerable for any act done by a shopman left in his shop who chose to accuse a person of having attempted to plunder the shop, every merchant would be responsible for a similar act of his clerk, and every gentleman for the act of his butler or coachman.' * * *

" 'In an action against a corporation for a malicious prosecution instituted by one of its servants, where it is not shown that the servant had any express authority to institute the prosecution, the burden is upon the plaintiff to show that the servant from the nature of his duties had implied authority to prosecute the plaintiff.' Thomas v. Can. Pac. Ry. Co. [14 Ont.L.Rep. 55], cited."

The principles announced in the case last cited are in accordance with the general law on the subject and are amply supported by decisions from other jurisdictions. I have found no case which holds otherwise, nor has any such been called to my attention. See Central R. Co. v. Brewer, 78 Md. 394, 28 A. 615, 27 L.R.A. 63; Murrey v. Kelso, 10 Wash. 47, 38 P. 879; Markley v. Snow, 207 Pa.St. 447, 56 A. 999, 64 L.R.A. 685; Russell v. Palentine Ins. Co., 106 Miss. 290, 63 So. 644, 645, 51 L.R.A.,N.S., 471. The case last cited contains the following clear statement of the legal principle which I believe controls the instant case: "For us to say that an agent can by his acts subject his principal to liability in damages to any one injured by his said acts, done when he was not about his master's business, and had no express or implied author-

ity to do them, but was merely seeking to avenge a supposed wrong already committed or to vindicate public justice, would be carrying the doctrine of respondeat superior far beyond its acknowledged limits. A servant intrusted with his master's goods may do what is necessary to preserve and protect them, because his authority to do so is clearly implied by the nature of the service; but when property has been taken from his custody or stolen, and the crime has already been committed, it cannot be said that a criminal prosecution is necessary for its preservation or protection. * * * It is an act clearly without the scope of the agency and cannot possibly be brought within the limits of the implied authority of the agent."

Genovese v. Butt, Tex.Com.App., 1932, 48 S.W.2d 587, was a case in which the facts were as follows:

Butt was owner of a grocery store which was operated by his agent Kelley. Genovese, who could not read or write, had a clerk make out a check in payment for some commodities purchased. The clerk made the check out on the wrong bank and it was dishonored. Kelley had Genovese arrested.

The question for decision was whether or not the bald fact that Kelley was manager of the store at the time he made the complaint against Genovese implied authority in Kelley, as the agent of Butt, to initiate criminal action. The Court answered this in the negative, saying: "The unpaid check represented a debt which Genovese owed Butt for the goods purchased at the time the check was given. Conceding that, as manager of the store for Butt, Kelley had implied authority to collect the debt, still such implied authority did not extend to the institution of a criminal prosecution, for the reason that a criminal prosecution is not a customary and proper means of collecting a debt due from one person to another."

As to plaintiff's contention that defendants may be held liable by acquiescence in the acts of their agents, it is clear as stated in Henshaw v. Globe etc., 112 W.Va. 556, 166 S.E. 15, 18, that: "There can be no ratification by acquiescence unless the principal has full and complete knowledge of all the material facts connected with the transaction."

In the instant case, as I have stated, there was no evidence that defendants had knowledge of any bad faith or dishonesty which may have actuated the agents in mak-

ing the identification of plaintiff, nor is it to be presumed that they could ordinarily have possessed any such knowledge, since this was a matter personal to the agents and locked within their own breasts.

An order may be submitted in accordance with the foregoing opinion, sustaining defendants' motion for judgment notwithstanding the verdict.