UNION UNDERWEAR Co., *Inc., A Corp.*

*v.*

FERRIS A. AIDE, *D/B/A* AIDE's DISCOUNT STORE

(No. 12661)

Submitted September 13, 1967. Decided November 14, 1967.

HAYMOND, JUDGE, dissenting.

*Pat R. Hamilton,* for appellant.

*Jackson, Kelly, Holt & O'Farrell, F. Paul Chambers, James K. Brown, Mahan, Higgins, Thrift & Graney, Patrick C. Graney, Jr., Weil, Gotshal & Manges, Gabriel Kaslow,* for appellee.

BROWNING, JUDGE:

Appellee, Union Underwear Company, Inc., hereinafter referred to as plaintiff, instituted this action in the Circuit Court of Fayette County praying that the appellant, Ferris Aide, d/b/a Aide's Discount Store, hereinafter referred to as defendant, be permanently enjoined from advertising, offering for sale or selling at retail any products manufactured and sold by plaintiff under its Fruit of the Loom trademark at prices less than the fair trade prices stipulated by plaintiff. The complaint alleges that defendant entered into a

contract with plaintiff to sell its Fruit of the Loom products at retail prices stipulated by plaintiff but, notwithstanding such contract, on July 29, and August 5, 1965, advertised and sold Fruit of the Loom products at less than the stipulated retail prices. The contract, attached as Exhibit A to the complaint, provides in part as follows:

> ". . . we hereby agree that we shall sell your Fruit of the Loom products only at retail in accordance with the provisions of this agreement.

> "We hereby agree not to advertise, sell, or offer for sale, your Fruit of the Loom products, directly or indirectly, in any State where agreements of this character are lawful:

> "1. At less than the minimum retail prices listed on Schedule A attached hereto, . . .

> "2. At less than the minimum retail prices fixed from time to time by notice mailed by you, . . .

> "If we at any time decide to discontinue the sale at retail of your Fruit of the Loom products, or decide to sell your said products at other than retail, or at other than the minimum retail prices established by you, we will notify you in writing immediately of such fact and offer in such writing to sell and deliver to your mill at your invoice prices all your Fruit of the Loom products which we then have on hand. You agree upon receipt of such notice that you will re-purchase the same and promptly furnish us with shipping instructions."

Defendant answered admitting the sales as alleged but contended that such contract was void because: the so-called fair trade act of West Virginia had been declared unconstitutional; such contract was in effect price fixing and contrary to public policy; the contract purports to be an agreement in perpetuity and against

public policy; and such contract contemplates only Fruit of the Loom products purchased from plaintiff and does not govern the sale of Fruit of the Loom products purchased elsewhere. The defendant also moved to dismiss the complaint on much the same grounds, which motion was overruled by the court. Defendant then moved to file an amended answer which alleged that since the inception of the action defendant had terminated his contract with plaintiff and there is therefore no basis for injunctive relief, appending as an exhibit thereto a letter from the defendant to plaintiff dated February 28, 1966, as follows:

"Please be advised that the 'Fair Trade Agreement' executed by the undersigned under date of July 11, 1963, is hereby terminated.

"Please be further advised that I presently have on hand no FRUIT OF THE LOOM products for return."

Plaintiff objected to the filing of the amended answer and moved to strike the same as failing to allege any sufficient defense which motion the court sustained and entered its order to the following effect:

"That the Defendant, Ferris A. Aide, his agents and employees, be and they hereby are until further order of this court, jointly and severally, ENJOINED, RESTRAINED, and INHIBITED from advertising for sale, offering for sale, or selling, directly or indirectly, any product or products manufactured or distributed by the Plaintiff, Union Underwear Co., Inc., bearing the trade-mark, brand or name 'Fruit of the Loom', at less than the minimum retail prices specified by the Plaintiff, Union Underwear Co., Inc., from time to time, as provided by said contract of July 11, 1963, plus the amount of all sales and excise taxes, except as provided in said contract and the Fair Trade Act of the State of West Virginia;"

The discovery deposition of Aide, reflecting his intention to obtain Fruit of the Loom products from whatever sources he can and sell them at prices less than those specified by plaintiff, appears in the record, apparently filed by plaintiff in support of its motion to strike the amended answer.

The threshold question to be determined is whether, as contended by defendant, this Court has heretofore passed upon and held unconstitutional Chapter 123, Acts of the Legislature, 1937, Regular Session, the "Fair Trade Act", now contained in Code, 47-11, as amended, and hereinafter referred to as the "Act". Contrary to defendant's contention, plaintiff argues that this Court has passed upon and held invalid only Section 6 of the Act. Paradoxically, counsel for both the plaintiff and the defendant rely for their respective positions upon the comparatively recent decision of this Court in *General Electric Company v. Dandy Appliance Co.,* 143 W. Va. 491, 103 S. E. 2d 310, hereinafter referred to as the *Dandy* case or *Dandy*.

The *Dandy* case was certified to this Court by the Circuit Court of Kanawha County on its own motion, each of the certified questions being predicated upon the fact that the Act was not applicable to the defendant Dandy inasmuch as he was not a party to any contract fixing minimum resale prices as provided by Section 2 of the Act. Incidentally, it might be observed at this point that there was no reference to Section 2 of the Act from the beginning to the end of the Court's opinion in the *Dandy* case or in the syllabus thereof. These are the four questions certified to this Court:

" (1)   Is or is not *the provision* of the West Virginia 'Fair Trade Act' (Acts of the Legislature, 1937, Regular Session, Ch. 123; W. Va. Code, as amended, Ch. 47, Article 11, *Sec. 6*), which requires the defendant to maintain certain minimum retail resale prices, a proper exercise of the police power of the State of West Virginia?

"(2) Is or is not *the provision* of the West Virginia 'Fair Trade Act', (Acts of 1937, Ch. 123; W. Va. Code, as amended, Ch. 47, Art. 11, *Sec. 6*), which requires the defendant to maintain certain minimum retail resale prices for appliances, *even though the defendant did not enter into any contract with the plaintiff* providing for such minimum retail resale prices, an invasion of the property rights of this defendant without due process of law?

"(3) Is or is not the West Virginia 'Fair Trade Act', (Acts of 1937, Ch. 123, Code, as amended, Ch. 47, Art. 11, *Sec. 6*), void and of no legal effect because enacted in 1937, contrary to a Federal Statute known as the Sherman Anti-Trust Act?

"(4) Does or does not *Section 6* of the West Virginia 'Fair Trade Act', (Acts of 1937, Ch. 123; W. Va. Code, as amended, Ch. 47, Art. 11, Sec. 6), *in so far as it relates to rights against non-signers*, embrace an object not expressed in the title of said Act so as to be rendered void as violative of Section 30, Article VI of the Constitution of the State of West Virginia?" (Italics supplied.)

In the paragraph preceding the stating of the four questions the court said:

"The Circuit Court overruled the defendant's demurrer as to its first three grounds and sustained it on the fourth ground, holding that the Fair Trade Act is void because it violates Section 30, Article VI of the Constitution of West Virginia, in that the title to the act is not sufficient to express its purpose of bringing within its scope a *non-signer* of Fair Trade agreements; and the Court certified to this Court the following questions, which though substantially are the same as those specified in the demurrer, are exactly and expressly these:" (Italics supplied.)

The following is a paragraph from the court's opinion which immediately precedes the last quoted paragraph:

"Section 6 of Chapter 123, Acts of the Legislature, 1937, Regular Session, reads as follows:

" 'Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.'

*"We consider it unnecessary, in view of the recital of the issues, to quote the other sections of the statute."* (Italics supplied.)

All of the language of the Court's opinion in *Dandy* will not, for obvious reasons, be restated herein to confirm what we believe is apparent, that is, that the Court in *Dandy* was passing only upon the question of the validity of Section 6, *the non-signer provision* of the Act. We believe the following statement in the opinion to be conclusive in that regard:

"Though it is of great advantage to the plaintiff to have additional protection in the provision making it unlawful to sell trademark or brand articles below the prices fixed by the manufacturer, *nevertheless the manufacturer or distributor is not deprived of his rights to make reasonable contracts with others in regard to the price at which such merchandise shall be sold, and he can protect himself by suits for enforcement or damages.* To extend such manufacturer's or distributor's rights to the public generally is but another improper exercise of the police power and not in our opinion warranted, and being such

is void, as in violation of Section 10 of Article III of the Constitution of West Virginia, which provides that:

" 'No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.' " (Italics supplied.)

The language "to the public generally" obviously referred to that portion of the Act, namely, Section 6, which applied to non-signers of such contracts. The Court clearly stated in the above quoted paragraph that a manufacturer or distributor is not to be deprived of his rights to "make reasonable contracts with others in regard to the price at which such merchandise shall be sold, and he can protect himself by suits for enforcement or damages." This is the next to the last paragraph of the opinion: "The title to the Fair Trade Act so enacted by the Legislature does not sufficiently indicate that *non-signers of contracts* for the sale of merchandise at prices fixed by the manufacturers or distributors are included within its terms and the words 'to protect . . . the general public against injurious and uneconomic practices in the distribution of competitive commodities. . .' do not in our opinion apprise the public that they may become pecuniarily liable for a violation of its provisions *as specified in Section 6 of the Act.*" (Italics supplied.) It is the view of the Court as presently constituted that the last paragraph of the *Dandy* opinion stating that ". . . we are of the opinion to, and so hold, that the so-called 'Fair Trade Act', Chapter 123, Acts of the Legislature, 1937, Regular Session, is not a proper exercise of the police power and is unconstitutional and void as violating the due process of law provisions, and as not containing a title sufficiently expressing its purpose, as required by the Constitution of West Virginia." must be read in the light of the next to the last paragraph, above quoted, as well as the other statements contained in the Court's opinion.

Up to this point there has been no reference to the syllabus of the *Dandy* case. A careful reading of all of the decisions of this Court upon the question of whether the syllabus or the statements contained in the body of the opinion are controlling as to the law of the case convinces the writer, at least, that there is considerable confusion with regard to that matter. Apparently the last case decided by this Court in which that question was discussed is *State v. Franklin*, 139 W. Va. 43, 79 S. E. 2d 692. This is the fifth point of the syllabus of that case: "Point 2, Syllabus, *State v. Collins*, 108 W. Va. 98, read in the light of the opinion and the facts therein and explained." Perhaps it would serve no good purpose for reasons hereinafter stated to discuss that question at length but it might be well to cite the cases and the articles thereon in the West Virginia Law Quarterly. *State v. Collins*, 108 W. Va. 98, 150 S. E. 369; *Koblegard et al., Trustees v. Hale*, 60 W. Va. 37, 53 S. E. 793, 116 Am. St. Rep. 868, 9 Ann. Cas. 732; *Koonce v. Doolittle*, 48 W. Va. 592, 597, 37 S. E. 644; "THE LAW—IN WEST VIRGINIA", by Thomas P. Hardman, Dean of the College of Law of West Virginia University, 47 W. Va. L.Q. 23. See also, 47 W. Va. L.Q. 141; 47 W. Va. L.Q. 209; 48 W. Va. L.Q. 55; 58 W. Va. L.Q. 263, and cases cited therein. But whatever the proper effect of the syllabus may be, the Court is of the view that there is no conflict in *Dandy* between the syllabus and the controlling language of the opinion and that by reading them together it is obvious that the Court passed only upon the narrow issue of the validity of Section 6 of the Act and did not attempt to, nor did it, strike down the act in toto.

This is the first syllabus point of the *Dandy* case: "The Fair Trade Act, as contained in Chapter 123, Acts of the Legislature, 1937, Regular Session, which provides that the sale of trade-marked items at a price less than that stipulated is a violation of the Act *whether the seller is a party to the stipulated price contract or not, is unconstitutional* and void as an ar-

bitrary and unreasonable exercise of the police power because of having no substantial relation to the public health, safety or general welfare.'' (Italics supplied.) If there were no second syllabus point in the case, and if the syllabus controls rather than the facts and statements contained in the body of the opinion, or if *Dandy* had not been a certified case with the limitations as to what the Court may rule upon in such a case, the first syllabus point conceivably might be construed as contended for by the defendant and the entire Act held invalidated by the *Dandy* decision. However it is obvious that this language in the first syllabus point, ''whether the seller is a party to the stipulated price contract or not'', while not as precise as it could have been, obviously referred to Section 6, since the language contained in that syllabus point is almost identical with the language contained in Section 6. The second and only other syllabus point of *Dandy* is explanatory of the first syllabus point and clearly denotes that the *Dandy* decision dealt with and struck down only Section 6 of the Act. Syllabus Point 2 is as follows: ''Section 6 of Chapter 123 of the Acts of the Legislature, 1937, Regular Session (Code 47-11-6) providing that any person 'Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby', embraces a matter not stated in the title of said Act, nor germane to the matter stated in the title, and is therefore, unconstitutional and void, because violative of Section 30, Article VI of the Constitution of West Virginia, which provides that no legislative act 'shall embrace more than one object, and that shall be expressed in the title.' '' Certain it is that there is no restriction upon the reading together of the points of the syllabus of a case regardless of the view that might be held as to whether the syllabus or

the body of the opinion is controlling as to the law of the case. Over and above all that has heretofore been said as to the extent of the decision of this Court in *Dandy* is the well settled rule from which this Court has never deviated applicable to cases that come here upon certificate. The author of the *Dandy* opinion stated the applicable law succinctly and well: ''This Court should consider only such questions as have been decided by the trial court and by it certified here. *Means v. Kidd,* 136 W. Va. 514, 67 S. E. 2d 740.'' To the same effect are: *Leishman v. Bird,* 147 W. Va. 525, 129 S. E. 2d 440; *W. Va. Water Service Co. v. Cunningham,* 143 W. Va. 1, 98 S. E. 2d 891; *Pope v. Edward M. Rude Carrier Corp.,* 138 W. Va. 218, 75 S. E. 2d 584; *Pancake Realty Co. v. Harber,* 137 W. Va. 605, 73 S. E. 2d 438; *Weatherford v. Arter,* 135 W. Va. 391, 63 S. E. 2d 572; *State v. A. R. Kelly & Co.,* 127 W. Va. 418, 33 S. E. 2d 230. See also the article by Judge Haymond, ''Certified Cases Under the Statutes and the Rules of Civil Procedure.'', 65 W. Va. L. Rev. 1.

In the very recent case of *State v. Wender,* 149 W. Va. 413, 141 S. E. 2d 359, a unanimous decision of this Court which was comprised of the same personnel as now, the opinion contained this statement with reference to *Dandy:* ''In *General Electric Co. v. A. Dandy Appliance Co.,* 143 W. Va. 491, 103 S. E. 2d 310, this Court held unconstitutional and void *that portion* of the so-called 'Fair Trade Act' of this state, Code, 47-11-6, as amended, which provided that the seller of trade-marked items at a price less than that stipulated by the manufacturer was a violation of the act whether or not the seller was a party to the stipulated price contract. . . .'' (Italics supplied.) It is the opinion of this Court that the validity of Section 2 of the Act which applies to parties who voluntarily enter into contracts with relation to the provisions of the Act has not heretofore been passed upon by this Court and we now proceed to do so. We hold that the provisions of Section 2 are valid, that they embrace no

object that is not clearly expressed in the title of the Act, to-wit, ''AN ACT to protect trade-mark owners, producers, distributors and the general public against injurious and uneconomic practices in the distribution of competitive commodities bearing a distinguishing trade-mark, brand or name, *through the use of voluntary contracts* establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed.'' (Italics supplied.) and that such provisions are not violative of any provision of the constitution of this state or of the United States. *Old Dearborn Distributing Co. v. Seagram Distillers Corp.*, 299 U. S. 183, 57 S .Ct. 139, 81 L. Ed. 109. While there is some authority elsewhere to the contrary it is obvious that the decision of this Court in holding valid all of the provisions of the Act exclusive of Section 6 is in accord with the weight of authority in this country. See *Max Factor & Co. v. Kunsman,* 5 Cal. 2d 446, 55 P.2d 177; *Scovill Mfg. Co. v. Skaggs Pay Less Drug Stores,* 45 Cal. 2d 881, 291 P. 2d 936; *Burroughs Wellcome & Co. v. Johnson Wholesale Perfume Co.,* 128 Conn. 596, 24 A. 2d 841; *Klein v. National Pressure Cooker Co.,* 31 Del. Ch. 459, 64 A. 2d 529; *General Electric Co. v. Klein,* 34 Del. Ch. 491, 106 A. 2d 206; *Seagram-Distillers Corp. v. Old Dearborn Dist. Co.,* 363 Ill. 610, 2 N. E. 2d 940; *Joseph Triner Corp. v. McNeil,* 363 Ill. 559, 2 N. E. 2d 929, 104 A.L.R. 1435; *Barron Motor, Inc. v. May's Drug Stores,* 227 Iowa 1344, 291 N. W. 152; *Iowa Pharmaceutical Ass'n. v. May's Drug ·Stores,* 229 Iowa 554, 294 N. W. 756; *Goldsmith v. Meade.Johnson & Co.,* 176 Md. 682, 7 A. 2d 176; *Home Utilities Co. v. Revere Copper & Brass,* 209 Md. 610, 122 A. 2d 109; *General Electric Co. v. Kimball Jewelers,* 333 Mass. 665, 132 N.E. 2d 652; *W. A. Sheaffer Pen Co: v. Barrett,* 209 Miss. 1, 45 So. 2d 838; *Johnson & Johnson v. Weissbard,* 121 N. J. Eq. 585, 191 A. 873; *General Electric Co. v. Packard Bamberger & Co.,* 14 N. J. 209, 102 A. 2d 18; *Lionel Corp. v. Grayson-Robinson Stores, Inc.,* 15 N.J. 191, 104 A. 2d 304; *Bourjois· Sales Corp. v. Dorfman,* 273 N. Y. 167, 7

N.E. 2d 30, 110 A.L.R. 1411; *General Electric Co. v. Masters,* 307 N.Y. 229, 120 N.E. 2d 802; *Ely Lilly & Co. v. Saunders,* 216 N. C. 163, 4 S.E. 2d 528, 125 A.L.R. 1308; *Union Carbide & Carbon Corp. v. Bargain Fair,* 58 Ohio Op. 145, 130 N.E. 2d 255; *Burche Co. v. General Electric Co.,* 382 Pa. 370, 115 A. 2d 361; *Miles Laboratories v. Owl Drug Co.,* 67 S. D. 523, 295 N.W. 292; *Frankfort Distillers Corp. v. Liberto,* 190 Tenn. 478, 230 S.W. 2d 971; *Seagram Distillers Co. v. Corenswet,* 198 Tenn. 644, 281 S.W. 2d 657; *Sears v. Western Thrift Stores of Olympia,* 10 Wash. 2d 372, 116 P. 2d 756; *Weco Products Co. v. Reed Drug Co.,* 225 Wis. 474, 274 N.W. 426; *Bulova Watch Co. v. Anderson,* 270 Wis. 21, 70 N.W. 2d 243; *Union Carbide and Carbon Corp. v. White River Distrib.,* 224 Ark. 558, 275 S.W. 2d 455; *Olin Mathieson Chemical Corp. v. Francis,* 134 Colo. 160, 301 P. 2d 139; *Bristol-Myers Co. v. Webb's Cut Rate Drug,* 137 Fla. 508, 188 So. 91; *Grayson-Robinson Stores, Inc. v. Oneida,* 209 Ga. 613, 75 S.E. 2d 161; *Bissell Carpet Sweeper Co. v. Shane Co.,* 237 Ind. 188, 143 N.E. 2d 415; *Dr. G. H. Tichenor Antiseptic Co. v. Schwegmann Bros.,* 231 La. 51, 90 So. 2d 343; *Shakespeare Co. v. Lippman's Tool Shop Sporting Goods Co.,* 334 Mich. 109, 54 N.W. 2d 268; *McGraw Electric Co. v. Lewis & Smith Drug Co.,* 159 Neb. 703, 68 N.W. 2d 608; *General Electric Co. v. Wahle,* 207 Ore. 302, 296 P. 2d 635; *General Electric Co. v. Thrifty Sales, Inc.,* 5 Utah 2d 326, 301 P. 2d 741; *Benrus Watch Co. v. Kirsch,* 198 Va. 94, 92 S.E. 2d 384; *Skaggs Drug Center, a Corporation v. General Electric Company,* 63 N.M. 215, 315 P. 2d 967; *Union Carbide & Carbon Corp. v. Bargain Fair, Inc.,* et al., 167 Ohio St. 182, 147 N.E. 2d 481.

The Circuit Court of Fayette County, therefore, is affirmed in its holding that the plaintiff was entitled to injunctive relief at the time the action was instituted. However, while it is true that this is a suit in which the parties are governed by equitable principles, and even though the record discloses without contra-

diction that the defendant wilfully and knowingly violated his contract with the plaintiff, we are constrained to hold that the provisions of the injunction granted by the trial court are too broad. We believe the restrictive language of the decree prohibiting the defendant in perpetuity from selling Fruit of the Loom products obtained from sources other than the plaintiff is not justified by the facts in the case which show that, even though it was not done strictly in accordance with the terms of the contract, defendant has cancelled his contract with the plaintiff and is not now a signatory party.

*Affirmed in part;*
*reversed in part;*
*and remanded.*

HAYMOND, JUDGE, dissenting:

I emphatically dissent from the judgment of the majority which, contrary to the clearly expressed view of four judges of the Court in its four to one decision, Judge Given dissenting, in *General Electric Company v. A. Dandy Appliance Company, Inc.,* 143 W. Va. 491, 103 S.E. 2d 310, sustains the constitutional validity of the Fair Trade Act, as contained in Chapter 123, Acts of the Legislature, 1937, Regular Session, notwithstanding the manifest intention of the majority in that case to hold and, as I believe, did hold, as stated in Point 1 of the syllabus, that the act was "unconstitutional and void as an arbitrary and unreasonable exercise of the police power because of having no substantial relation to the public health, safety or general welfare." In my judgment the foregoing quotation from the syllabus point in the *Dandy* case constitutes the actual holding and decision of this Court on the question of the constitutionality of the entire Fair Trade Act.

Though there may be a difference of opinion among the members of the bench and bar of this State as to whether a point stated in the syllabus prevails over

statements and conclusions in the opinion of the Court and constitutes the holding of the Court in any given case, it is my considered view that though this Court has held the provision of Article VIII, Section 5, that "it shall be the duty of the court to prepare a syllabus of the points adjudicated in each case concurred in by three of the judges thereof, which shall be prefixed to the published report of the case." to be directory, *State v. Smith,* 119 W. Va. 347, 193 S.E. 573; *Henshaw v. Globe & Rutgers Fire Insurance Company,* 112 W. Va. 556, 166 S.E. 15; *Horner v. Amick,* 64 W. Va. 172, 61 S.E. 40; and though, in consequence, this Court may refrain from preparing a syllabus of any point adjudicated, yet if the Court does in fact prepare such syllabus of a point adjudicated, as it did in the *Dandy* case, such syllabus should be and, based on my understanding as a practitioner and a judge for more than a half century, is generally considered by most of the members of the bench and bar of this State, as it is so considered by me, to prevail over statements in the opinion, whether explanatory or contradictory, and to constitute the actual decision in the case. In this position I am supported by the decision of this Court in *Bank v. Burdette, Judge,* 61 W. Va. 636, 57 S.E. 53. The opinion in that case, prepared by Judge Brannon, contains this statement: "Now our Constitution requires the court to make the syllabus, and it is that which is the real decision over the opinion." Though the cases cited in the majority opinion and other decisions of this Court say that the syllabus in the case should be read in the light of the opinion, it is clear to me that when the syllabus in the *Dandy* case is read in the light of the majority opinion it constitutes the holding of that case that the Fair Trade Act was unconstitutional in its entirety. In short it is my considered opinion, despite the labored effort of the majority to limit the decision to the unconstitutionality of Section 6 of the Fair Trade Act relating to non-signers of contracts, that the four to one decision of this Court in the *Dandy* case actually held the Fair

Trade Act in question, as expressed in point 1 of the syllabus, unconstitutional and void in its entirety as an arbitrary and unreasonable exercise of the police power because it bore no substantial relation to the public health, morals, safety or general welfare of this State. That is what point 1 of the syllabus holds and that in my judgment is the holding of the majority of this Court in that case which was composed of the writer of this dissent, Judge Browning who is the writer of the contrary majority opinion in the instant case, and Judge Donley and Judge Ducker who was the writer of the majority opinion in the *Dandy* case. The remaining judge, Judge Given, who dissented, as his dissent clearly shows, based his dissent on the action of the majority in holding the Fair Trade Act unconstitutional in its entirety. This was contrary to Judge Given's view that it, as well as most of such acts in the various states, was a constitutional exercise of the police power of the State; and for that reason he filed his dissent.

Regardless of the lengthy discussion and conflicting views of counsel as expressed in their written briefs and oral arguments as to the extent of the holding in the *Dandy* case, no one can read the opinion of the majority or the dissenting opinion in the *Dandy* case with care, intelligence and discrimination without being convinced that all the judges who participated in that case then intended and believed that the decision of the majority was that the Fair Trade Act in its entirety, not merely its Section 6, was unconstitutional and void as an arbitrary and unreasonable exercise of the police power of the State.

Though the majority opinion in the instant case contains many quoted statements from the majority opinion in the *Dandy* case to sustain its erroneous and labored view that the decision in that case was limited to the unconstitutionality of Section 6 of the Fair Trade Act, the majority opinion omits the important and controlling statements in the majority opinion in

the *Dandy* case which show beyond question that the majority intended to hold, and actually did hold, the Fair Trade Act unconstitutional and void in its entirety, and in consequence the holding in that case was a binding decision of this Court to that effect which can not be distinguished from the present holding of the majority and which, not having been overruled, is still of binding and controlling force and effect and should have been followed and applied by the majority of this Court in this case.

The following quotations from the majority opinion in the *Dandy* case, which are, of course, omitted from the majority opinion in this case, clearly and unequivocally show the scope of the holding and the reasoning of the four to one decision in the *Dandy* case which in my opinion are controlling and should have been followed and adhered to in the decision in this case. The statement that the majority of this Court in the *Dandy* case intended to hold and did hold the Fair Trade Act unconstitutional in its entirety is not merely my language; it is the language of the majority opinion in that case as will appear from the italicized portions of the following quotations:

"The first and second questions certified may well be considered together *because it must first be determined whether the Fair Trade Act is a proper exercise of the police power of the state,* for if it is not, then it necessarily follows that it is not due process as to non-signers, but if the Act is within the police power of the state, the question of whether it violates the due process provision of the West Virginia Constitution may still require consideration and determination.

"Although great reliance is placed by the plaintiff upon the case of *Old Dearborn Distributing Co. v. Seagram Distillers Corp.,* 299 U.S. 183, 57 S. Ct. 139, 81 L. Ed. 109, decided in 1936, and which involved a similar Fair Trade statute enacted in Illinois, and that case remains as authority for the validity of the West

Virginia Act in so far as its validity under the due process clause of the Federal Constitution is concerned, such authority is not conclusive upon this Court in determining whether such an Act is within the police power of this State or is violative of the due process of law provision of the West Virginia Constitution, even though the provisions of both Federal and State Constitutions are practically identical in language. However, *our conclusion that the Act in question is not a proper exercise of the police power of this state will eliminate any necessity for holding the Act valid because it may not violate the Federal Constitution.* We are of the opinion that the determination of the extent and limitations of the police power of this state remains a prerogative of the sovereignty of this state and any question of constitutionality thereof under the Constitution of West Virginia is determinable by this Court. The converse proposition which was involved in the *Old Dearborn Distributing Company* case is not necessarily applicable to the case here before us for decision.

''Since the first enactment of these Fair Trade Laws there have been decisions in many of the states determining their validity or invalidity, and the earlier decisions were mostly favorable to their validity, but as of the present time it appears that the decisions are more or less equally divided. With such respectable authority in favor of the positions of both plaintiff and defendant, it would not be too difficult to substantiate either position, but here it becomes necessary to define the police power of this state so far as the same is or is not applicable here, and decide the issue in this case accordingly.

''Two States, namely, New Mexico and Ohio, have by their very recent decisions declared Fair Trade Acts an improper exercise of the police power of the state, and accordingly, violative of the due process law provisions of their constitutions. *Skaggs Drug Center, a Corporation v. General Electric Company, a*

*Corporation*, 315 P. 2d 967; *Union Carbide & Carbon Corp. v. Bargain Fair, Inc., et al.* 167 O.S. 182, 147 N.E. 2d 481.

"The case of *Skaggs Drug Center v. General Electric et al.*, supra, contains a quite complete review of many of the cases on this subject, and in addition thereto, the court has cited the extensive annotations contained in 125 A.L.R. 1335 and 19 A.L.R. 2d 1139, to which cases and annotations we now herein refer, in order to eliminate the necessity of citing and discussing in detail the opinions and decisions on this subject. Such a discussion will only result in a repetition of the authorities without affording additional reason or information. However, because the following pertinent paragraph quoted in the *Skaggs* case is so expressive of our reasoning, *we insert the same with approval here, as follows*:

" 'The Supreme Court of Georgia in *Cox v. General Electric Company, supra,* in commenting upon the decisions of other states as to the fair trade acts, made the following very pertinent statement [211 Ga. 286, 85 S.E. 2d 519]:

" 'It is earnestly argued that a number of the supreme courts have upheld the validity of their Fair Trade Acts, which were almost, if not entirely, identical with the Georgia statute under consideration, and our attention is called to a number of decisions by the Supreme Court of the United States. We are aware of the fact that a number of the State Supreme Courts have upheld these acts, a number have not passed upon them, and others have held them invalid. We are also familiar with the conflicting decisions on this question by the Supreme Court of the United States, as pointed out in the special concurring opinion of Chief Justice Duckworth in *Harris v. Duncan, supra* [208 Ga. 561, 67 S.E. 2d 692]. We are here, however, dealing with the statutes of this State and with the question of whether or not they violate the Constitution

of the State of Georgia. What the courts of other States have decided is not controlling, and this is one of the few powers left to States to decide for themselves regardless of what the Supreme Court of the United States may nor may not have decided. We are also familiar with the modern trend to allow the government to encroach more and more upon the individual liberties and freedoms. So far as we are concerned, we will not strike down the Constitution of our State for this purpose; neither will we follow the crowd. The scheme described in the petition now under consideration permits a manufacturer, under the guise of protecting his property rights in a trade name and trademark, to control the price of his product down through the channels of trade into the hands of the ultimate consumer, and into the hands of persons with whom he has no contractual relation whatever. This statute clearly violates the provisions of the due process clause of the Constitution of the State of Georgia.'

"And further, at page 974, the Court concluded:

" 'In view of the above, it will be determined that §2, Chapter 44 of the Laws of 1937 (§49-2-2, N.M.S.A. 1953) is unconstitutional and void as an arbitrary and unreasonable exercise of the police power without any substantial relation to the public health, safety, or general welfare insofar as it concerns persons who are not parties to contracts provided for in §1, Chapter 44, Laws of 1937 (§49-2-1, N.M.S.A. 1953).'

"In *Union Carbide & Carbon Corp. v. Bargain Fair, Inc.,* supra, the Court, in holding that the Fair Trade Act was an unauthorized exercise of the police power and contravened the 'due process' provision of the Ohio Bill of Rights, said:

" 'In recent years and in the light of present-day conditions, courts have become more critical of the fair trade acts and have invalidated parts of them with increasing frequency.

" 'Basically, those cases approving the acts in toto proceeded on the theory that a producer of a trademarked product, who has expended money and effort in establishing it on the market at a specified selling price, ought not to be subjected to the injury which cut-rate sales would entail; that the ownership of a trademark and goodwill is a property right which the law should protect and is assertable against all who sell the producer's products; and that price cutting is not only damaging to the goodwill and business of the producer but has a deleterious effect on the public as well. Also brought into the equation is the economic philosophy of the fair trade acts, which it is said bear a real and substantial relationship to the public welfare, and the proposition that their enactment is a matter for legislative determination in the exercise of the police power, with which the courts should not interfere.

" 'On the other hand, the position taken by other courts is that the real effect of the fair trade acts is anticompetitive price fixing rather than the protection of the goodwill of trademarked products. Goodwill should be measured by the price the goods can command in a competitive market and not by allowing the manufacturer to sell at a pegged retail price which he himself selects. In normal times, the inflexible price arrangements which the acts sanction are opposed to our traditional concepts of free competition for the benefit of the consuming public, and the clause binding those who do not enter into a price-fixing contract with the manufacturer offends such concepts. Hence, the nonsigner clause interferes with the constitutional right of the owner of property to dispose of it as he pleases and represents the exercise of the police power for a private as opposed to a public purpose.'

"While much is said of the rights of owners of trademarks and brands to have their property rights protected, and certainly such rights should be protect-

ed to such extent as may be compatible with the constitutional rights of the public, *we do not think that the protection which the Act in question purports to give is reasonably related to the public morals, health or welfare,* and, as this Court has recently in the case of *State v. Memorial Gardens Development Corp.,* 143 W. Va. 182, 101 S.E. 2d 425, said:

" 'All legislation under the police power must be within the constitutional inhibitions. *Milkint v. Mc-Neeley,* 113 W. Va. 804, 169, S.E. 790; *Eubank v. City of Richmond,* 226 U.S. 137, 33 S. Ct. 76, 57 L. Ed. 156.'

"Though it is of great advantage to the plaintiff to have additional protection in the provision making it unlawful to sell trademark or brand articles below the prices fixed by the manufacturer, nevertheless the manufacturer or distributor is not deprived of his rights to make reasonable contracts with others in regard to the price at which such merchandise shall be sold, and he can protect himself by suits for enforcement or damages. *To extend such manufacturer's or distributor's rights to the public generally is but another improper exercise of the police power and not in our opinion warranted, and being such is void, as in violation of Section 10 of Article III of the Constitution of West Virginia, which provides that:*

" 'No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.'

"So from the foregoing we are of the opinion, and so hold, that the so-called 'Fair Trade Act', Chapter 123, Acts of the Legislature, 1937, Regular Session, Chapter 47, Article 11, Section 6 of the Code of West Virginia, as amended, is not a proper exercise of the police power of the state and is unconstitutional, *and the answer to the first certified question is in the negative and the answer to the second certified question is in the affirmative.*

" * * *

"For the reasons stated, *we are of the opinion to, and so hold, that the so-called 'Fair Trade Act', Chapter 123, Acts of the Legislature, 1937, Regular Session, is not a proper exercise of the police power and is unconstitutional and void as violating the due process of law provisions,* and as not containing a title sufficiently expressing its purpose, as required by the Constitution of West Virginia.''

That Judge Given dissented from what he believed and considered was the erroneous holding of the majority that the Fair Trade Act was unconstitutional and void in its entirety clearly appears from this quotation from his dissenting opinion:

"My understanding of the majority opinion, as it relates to the constitutionality of the Fair Trade Act, is that the power of the Legislature in the passage of the Act in question was so arbitrarily exercised as to render the Act itself unconstitutional and, impliedly, at least, that the passage of a Fair Trade Act is within the legitimate reaches of the legislative branch of the State Government. I agree that such legislation is within the police power of the State, and that such power must not be arbitrarily or capriciously exercised. I can not believe that the power of the Legislature as to the Act here involved was arbitrarily exercised.''

To recapitulate, I would reverse the decision of the Circuit Court of Fayette County and dismiss the proceeding for the reason that the actual decision in the *Dandy* case correctly held the Fair Trade Act unconstitutional and void in its entirety and was not limited to the unconstitutionality of Section 6 of the Act as the majority erroneously holds in this case, and for the additional reason that regardless of the scope of the decision in the *Dandy* case, it can not be successfully contended that it was not the clearly expressed intention and the clearly expressed reasoning of four of the judges of this Court that the Fair Trade Act is

unconstitutional and void in its entirety and that intent and reasoning, being sound and correct, should have been followed and adhered to in the decision of this case. In the light of the foregoing action of the majority in the *Dandy* case there is no excuse or justification for the action of the majority in misinterpreting the scope and effect of the decision in the *Dandy* case and, in the face of that decision, in holding the Act, except Section 6, to be constitutional as a valid exercise of the police power of this State. It is my considered judgment that the Act is unconstitutional in its entirety because, as the majority in the *Dandy* case declared, it bears no substantial relation to the public health, morals, safety or general welfare and for that reason it constitutes an arbitrary and unreasonable exercise of the police power. Instead the Act is designed to maintain the price fixed by the manufacturer of the articles involved, tends to create a monopoly, and necessarily removes such articles from or renders them less susceptible to competitive prices in the open market. In that respect the Act has nothing to do with the public health, morals, safety or general welfare and is manifestly not within the police power of the State any more than the efforts of the local grocer or druggist to raise or lower the price of the merchandise in which he deals. Again I say that I would reverse the decision of the circuit court and dismiss the case at the cost of the plaintiff.